THE MISSOURI PACIFIC RAILWAY COMPANY V. H. V.
BEESON.

PAROL CONTRACT, *Not Superseded by Bills of Lading.* The plaintiff entered
into a parol contract with the defendant, a railway company and a com-
mon carrier of goods from Paola, Kansas, to St. Louis, Missouri, to carry
certain goods, at a stipulated price, from Paola to Philadelphia, Penn-
sylvania. The goods were all marked to a certain consignee in Phila-
delphia, Pennsylvania, and were delivered to the defendant, under this
contract, and put into the defendant's cars by the defendant, and the cars
were locked. Afterward the defendant handed to the plaintiff a bill of
lading for the goods, which showed that the goods were consigned to said
consignee at Philadelphia, Pennsylvania, and were to be carried from
Paola to "St. Louis station." The plaintiff accepted this bill of lading
without objection, examining it only to see that it stated the amount of
goods delivered, and that it contained the name of the proper consignee
at Philadelphia, Pennsylvania, which it did, and did not look to see and
did not see or know that the bill of lading showed that the goods were
to be carried by the defendant only to "St. Louis station." A portion of
the goods was not carried to Philadelphia, but was lost, and the plaintiff
sued the defendant for the value thereof. *Held,* That the plaintiff may
show the original parol contract between the parties, and that, when
shown, it, and not the bill of lading, will be considered as settling the
rights of the parties; that the bill of lading, taken under the circumstances
under which the present bill of lading was received by the plaintiff, will
not be held to supersede or overturn or destroy the original parol con-
tract between the parties.

*Error from Miami District Court.*

ACTION brought by *Beeson* against the *Missouri Pacific
Railway Company,* to recover from the defendant the value
of two sacks of wool. The plaintiff alleged in his petition,
among other things, that on October 20, 1881, the plaintiff
delivered to the defendant, at Paola, Kansas, eighty-one
sacks of wool, to be carried by the defendant as a common
carrier of goods, to the city of Philadelphia, Pennsylvania,
and there to be delivered by the defendant to W. C. Hous-
ton, jr., & Co.; and that the defendant failed to carry two of
such sacks of wool, or to deliver them to W. C. Houston, jr.,

& Co., or to anyone else for the plaintiff, or to account for them in any other manner to the plaintiff.

The railway company, in answer to the plaintiff's petition, admitted that it was a common carrier of goods from the city of Paola, Kansas, to the city of St. Louis, Missouri; denied that it ever agreed to carry said wool to the city of Philadelphia, or to deliver it to the consignees; but admitted that on October 20, 1881, the plaintiff delivered to the agent of the defendant, at Paola, Kansas, eighty-one sacks of wool, and that the defendant agreed to carry the wool from Paola, Kansas, to its station at St. Louis, Missouri, the terminus of its road, and there deliver the same to some responsible carrier •on the route from St. Louis to Philadelphia; and the defendant further alleged that it performed all things which it had agreed to perform. It attached copies of the bills of lading for the wool to its answer, and made them a part thereof.

The plaintiff, in his reply to this answer, denied each and all matters set forth in the defendant's answer which were inconsistent with the allegations of his petition.

There were two bills of lading, each issued in duplicate, one for seventy-nine sacks of wool, and the other for two sacks of wool. Both the bills of lading, original and duplicate, were issued in the same form, except that the words and figures showing the number of sacks of wool, and whether original or duplicate, were different. The original bill of lading for the seventy-nine sacks of wool reads as follows:

MISSOURI PACIFIC RAILWAY COMPANY.

(Agents must not in any case receipt beyond points on this road.)

PAOLA, Ks., Oct. 20, 1881.

Received of H. V. Beeson, by Missouri Pacific Railway Company, the following property in apparent good order (except as noted), marked and consigned as in the margin, which they agree to deliver with as reasonable dispatch as their general business will permit, subject to the conditions mentioned below, in like good order (the dangers incident to railroad transportation, loss or damage by fire while at de-

pots or stations, loss of combustible articles by fire while in transit, and unavoidable accidents excepted), at St. Louis station, upon the payment of charges.

CONDITIONS.

The company do not agree to carry the property by any particular train, nor in time for any particular market.   Oil and all other liquids at owner's risk of leakage.   Liquids in glass or earthen, drugs and medicines in boxes, glass and glassware in boxes, looking-glasses, marble, stoves, stove plates and light castings, earthen or queensware, at owner's risk of breakage.   Agricultural implements, cabinet ware and furniture not boxed, carriages, at owner's risk of breakage or damage by chafing.   Oysters, poultry, dressed hogs, fresh meats and provisions of all kinds; trees, shrubbery, fruit, and all perishable property, at owner's risk of frost or decay.

| MARKS, CONSIGNEE AND DESTINATION. | ARTICLES. | WEIGHT. Subject to correction. |
|---|---|---|
| W. C. Houston, Jr., & Co., Phila., Pa. | 79 sks. wool. | 18,120, |

[Original.]                           JAS. NEYLON, *Agent.*

The case was tried by the court and a jury, and the plaintiff introduced the following, among other evidence.   The plaintiff, for himself and as a witness, testified as follows:

"I am the plaintiff.  I remember the fact of making a contract to ship this wool; I made one application on or about the 1st day of October, 1881; I did not get my wool ready, but the statement the railway company made to me was $1.09 or $1.11 per hundred to Philadelphia.   It was with the Missouri Pacific, at Paola.   Neylon was agent, and he telegraphed to St. Louis to some one to get rates.   Mr. Neylon was agent of Missouri Pacific.   My application to Mr. Neylon was this: 'What will you charge me for wool to Philadelphia on a through bill of freight?'   His answer was that he would have to telegraph to some man in St. Louis.   I had to come down after that to see what the answer was.   I went down a couple of times.   He handed me a paper stating the rate, and I put it in my pocket; I afterward lost it.   I carried it a couple of months, and thought the thing was all right, and lost the paper.   I think that the paper stated that the rate would be $1.09 or $1.11, and only had the figures on it.   He stated this was on a car-load.   I delivered them eighty-one sacks of wool on that contract and arrangement, about the 19th or 20th day of October, 1881.   These sacks were numbered from one to eighty-one consecutively, with the weight of sack on same, and my initials, 'H. V. B.,' on same, and

the name of consignees, 'W. C. Houston, jr., & Co., Philadelphia, Pennsylvania,' was marked on sacks, and the number of their place of business. I weighed and marked this wool myself. When there was one-half pound over, I threw it off in weighing."

(Here the defendant stated that no dispute as to quantity is made—"I am satisfied weight was correct.")

"Sack No. 19 had 273 pounds; sack No. 67 had 281 pounds. I have forgotten, the amount of the freightage. They charged me some twenty-odd dollars more than they should. I made an application to Neylon, agent; the reclamation was an overcharge on rate of shipment, not for sacks lost. They repaid me $17.80 or $17.90, I don't remember which. I paid freightage on whole 81 sacks of wool. It was paid by W..C. Houston, jr., & Co., at Philadelphia, for me. I had their letter showing the amount paid. I loaded the wool myself, with the assistance of two men. We got all the wool in one car, except two sacks. Those two sacks were Nos. 8 and 9. Mr. Neylon said those two sacks should go through at same rates as car-load. He told me so. I made a demand upon the railroad company at Paola, Kansas. The first application was for tracers to find the lost wool. I also made an application of proof of loss. I served them with an affidavit of loss."

On cross-examination the witness testified: "I have stated everything as near as I can relate it that I would apply to the other road. I understood him to say that the telegraphing done was to head freightman at St. Louis, and he telegraphed. Mr. Neylon showed me at that time, after telegraphing the same, that their charges were $1.09 or $1.11, and handed this to me on a piece of paper. I don't think he showed me the telegram; he handed me a piece of paper only. I offered to pay him the rate through to Philadelphia, and he refused to accept it. He said they would collect it at Philadelphia. He didn't tell me anything more than I have told you. Mr. Neylon gave me duplicate bills of shipments, an original and duplicate for the car-load and the same for the two sacks. I sent the originals with a draft to Philadelphia, and got the money on it."

The witness was here shown original bills of lading attached to deposition of William H. Triol, and on examination of the same said:

"I can't tell whether these are the originals, or not; but I think they are. I have the duplicates, I think. He gave me four others. Mr. Neylon, when the sacks were lost, asked me for the bills, and said that he would send them to the St. Louis agent to see about loss, and I gave them to him. I afterward found two bills. I can't tell how I got them. These bills are the same as the duplicates."

On re-direct examination, the witness testified: "These bills of lading were handed to me after the car was loaded and locked and the train ready to go, and I only examined them to see the amount of the weight and that the consignees' name was right. Mr. Neylon, agent, did not call my attention to any printed matter on the bills. I only examined them to see that the proper number of sacks was on the bills, the proper number of pounds, and that the name of W. C. Houston, jr., & Co. was on them. Mr. Neylon did not tell me that he was acting for any other railroad company than the Missouri Pacific; said nothing to me about what line they would go over east of St. Louis. I did not direct what route they were to go over—it was all left with his road. There was nothing said as to any rate between Paola and St. Louis and Philadelphia."

On re-crossexamination, the witness said: "I don't think Mr. Neylon counted the sacks, but think he took my word for it. After the car was filled, he made out the bills, and then handed them to me. I accepted what I read. I took them away with me. I attached these bills to my draft. The draft was for $3,000. I sent the bill to show that the wool was shipped."

Upon this and the other evidence, the jury found the following verdict and special findings, to wit:

"We the jury find for the plaintiff, and assess his damages at one hundred and ninety-eight and $\frac{25}{100}$ dollars ($198.25).

"1. Did the agent of defendant ever agree with plaintiff that defendant would carry 81 sacks of wool from defendant's station at Paola, Kansas, to Philadelphia, Pa.? A. Yes.

"2. Did the agent of defendant at the station at Paola, Kansas, have any authority to receive wool or any other freights at said station, and contract for its delivery to points beyond the terminus of defendant's own road? A. Yes.

"3. Did the agent of defendant, at its station at Paola, Kansas, make a special contract with the plaintiff on the 20th day of October, 1881, for the shipment of 81 sacks of wool

from Paola, Kansas, to Philadelphia, Pa.? A. Yes; about that date.

"4. If the agent of defendant made a special contract with the plaintiff for the shipment of 81 sacks of wool from Paola, Kansas, to Philadelphia, Pa., what were the terms and conditions of said contract? A. Defendant was to carry the 81 sacks of wool to Philadelphia, Pa., at the rate of $1.09 per hundred lbs.

"5. If there was a special contract between the plaintiff and defendant for the carriage of 81 sacks of wool from Paola, Kansas, to Philadelphia, Pa., when and how was it made, and was it agreed to and understood by the plaintiff and the agent of the defendant in the same manner? A. On or about the 20th day of October, 1881, by defendant agreeing to deliver wool in Philadelphia at a stipulated rate, and plaintiff accepting his offer by shipping the wool. We believe the contract was understood and agreed to in the same manner by plaintiff and defendant."

Upon the foregoing verdict and findings the court adjudged that —

"The plaintiff have and recover of and from the defendant the said sum of $198.25, together with his costs herein expended, taxed at $——; and hereof let execution issue."

Prior to the trial of the case, the defendant moved the court for judgment in its favor upon the pleadings, which motion was overruled by the court, and the defendant excepted. After the plaintiff introduced his evidence in the case and rested, the defendant demurred to the evidence, which demurrer was overruled by the court, and the defendant excepted. The defendant also excepted to several paragraphs of the charge of the court to the jury. The defendant also asked the court to give several instructions to the jury, which were refused by the court, and the defendant excepted. After the verdict and special findings were rendered by the jury, the defendant moved the court to set aside such verdict and findings, and for a new trial, which motion was overruled by the court, and the defendant excepted. The defendant brings the case to this court, and asks for a reversal of the judgment of the court below. Other facts are stated in the opinion.

*W. A. Johnson,* for plaintiff in error:

When a common carrier of goods receives property without any special contract, it undertakes only for their transportation over its own line; and when it places them in the hands of the carrier over the next line on the route to the destination marked on the packages, the company receiving the goods discharges its obligation to the owner by delivering them to a responsible company next in order in the passage to the place of destination. (8 N. Y. 37.)

Bills of lading, signed by the railroad company and accepted and acquiesced in by the plaintiff, (there being no fraud, deceit or mistake in the transaction,) are to be regarded as contracts in writing between the parties. The bills, having been produced, cannot be varied or contradicted by parol testimony. (19 Ohio St. 221; 3 Kas. 205.)

A railway company on receiving goods consigned to a destination beyond the terminus of its line, is not liable, by its general duty as a common carrier, to transport them beyond its own line; and is not liable for loss or damages to the goods in the hands of connecting lines, unless by special contract it has assumed such liability. (Lawson's Contracts of Carriers, 355, 356; 16 Wall. 324; 22 id. 123; 1 Gray, 502; 45 Pa. St. 408; 6 Hill, 157; 29 Vt. 426; 100 Mass. 26; 19 Minn. 376; 29 Md. 168; 47 Me. 573; 11 Allen, 295; 48 N. Y. 462; 49 id. 291; 16 Mich. 79; 22 Conn. 1; 2 Wait's Actions and Def. 36, 37, and cases cited.)

The consignor attached the bills of lading to his draft for three thousand dollars, and drew the money on the bills. All the interest that he had in the shipment then passed to the consignees. It was tantamount to an assignment of the bills of lading to W. C. Houston, jr., & Co. When the wool arrived in Philadelphia, they received it from the Pennsylvania railway company, paid the freight charges, and were entitled to claim all the obligations against the carriers through whose hands it had passed. They did claim of the railway company the property, and demanded that it search for the

wool and deliver it to them. Before the defendant could be held liable for the carriage thereof to Philadelphia, or could be bound by such obligation as is claimed by plaintiff, it should be made clear that it had assented to the contract in the full sense as claimed. (16 Kas. 333.)

Under the English rule, the receipt of goods by a common carrier, directed to a point beyond its own route, creates a *prima facie* contract to carry goods safely to their final destination; but the prevailing American rule is, that where a common carrier accepts goods directed to a place beyond the terminus of its route, the law, in the absence of a special contract, implies an undertaking on its part to deliver them, at the end of its route, to the next succeeding carrier; and it is not liable for damages or loss of the goods occurring after a safe delivery thereof to the carrier next in order in the regular course of transportation to the place of destination. (16 Wall. 318.)

This is not like a case where the carrier receives goods for carriage over its own line, and not destined to a point beyond its terminus, where it seeks to limit its common-law ability. In this case, the plaintiff is seeking to hold the defendant for the performance of duties not imposed upon it by the common law as a carrier of goods, but by a special undertaking. The railway company, on the receipt of the wool, and before it left the depot of defendant, made out bills of lading, signed them and handed them to the plaintiff, who had abundant opportunity to examine all the provisions of these bills, and did in fact read portions of each bill. If plaintiff failed to read all of the bills, it was his own fault that, in accepting these bills of lading and acting upon them, he expressly accepted and agreed to all the stipulations and conditions. The law will not now allow him to plead his own negligence, or to say that the provisions of the bills were not binding upon him. (3 Kas. 205; 19 Ohio St. 236; 36 Iowa, 188.)

*Beeson & Baker*, for defendant in error:

There was no error in overruling the demurrer to the evidence. The defendant in error alleged, and proved, a contract

to carry to Philadelphia. Beeson asked the agent of plaintiff in error, "What will you charge me for wool to Philadelphia, on a through bill of freight?" The question was in substance, "What will you (the Missouri Pacific railway company) charge me to carry my wool to Philadelphia?" The agent answered the question by giving him the rate; in other words, by telling him what the Missouri Pacific railway company would charge him to carry his wool to Philadelphia. There was nothing said about carrying the wool to St. Louis, or about the rate to St. Louis, or about the rate from St. Louis to Philadelphia, or as to where the Missouri Pacific line terminated. There was no evidence whatever tending to show that Beeson then knew where this line terminated. When he offered to pay the freight through to Philadelphia, the agent did not say, "We are only contracting to carry your wool to St. Louis, and can collect the freight only to that point;" but he said, "We will collect it at Philadelphia." After Beeson ascertained that more than the contract rate had been collected at Philadelphia, he made a demand of the Missouri Pacific railway company for a refunding of the excess, and it refunded. The contract was clearly a contract to carry to Philadelphia, at an agreed rate; and this plaintiff in error, by refunding the excess, recognized and ratified the through contract.

Upon the trial the principal question of fact in controversy was, as to what was the contract. Beeson introduced evidence tending to prove a contract for through shipment, and the railway company introduced evidence tending to prove a contract to carry only to St. Louis. It was manifestly the duty of the court to leave this question of fact to the jury. The court below could not have committed a more egregious error than to instruct the jury that the bills of lading constitute the contract, as counsel for the plaintiff in error claims the court should have done. The jury correctly decided this question of fact.

When the bills of lading were delivered to Beeson, the contract for the through shipment had been made, the wool

had been delivered to the defendant under this contract, was locked in their cars, and the train ready to start. He then certainly was not bound to anticipate that the defendant would attempt to change the contract from a contract to carry to Philadelphia to a contract to carry to St. Louis. He assumed, as he had a right to assume, that the defendant would act in good faith, and fulfill the contract under which the wool had been delivered. He did not, by keeping the bills of lading without reading them, consent to release the defendant from its obligation to carry to Philadelphia. He received no consideration for so doing. If these bills superseded the original contract, and the defendant was bound to carry only to St. Louis, what was Beeson bound to pay for the transportation to St. Louis? It will not do to say that he was bound to pay a reasonable rate, or the schedule rate, for the evidence shows conclusively that this was not the intention of the parties. There was manifestly an agreed rate; and the agreement was not for a rate from Paola to St. Louis, but from Paola to Philadelphia. If there was no through contract, why did the plaintiff in error refund the overcharge collected at Philadelphia?

There was no error in the general instructions given, or in refusing the special instructions asked by the plaintiff in error. The first, second and third general instructions fairly state the issues, and submit to the decision of the jury the question as to what was the contract. The fifth general instruction was proper, in view of the evidence. It was necessary for the jury to decide whether Beeson had assented to the terms of the bills of lading. The mere fact that Beeson took and kept them was not conclusive evidence that they embodied the contract.

The opinion of the court was delivered by

VALENTINE, J.: This was an action brought by H. V. Beeson against the Missouri Pacific railway company, in the district court of Miami county, Kansas, to recover from the defendant the value of two sacks of wool. The plaintiff al-

leged in his petition, among other things, that on October 20, 1881, the plaintiff delivered to the defendant, at Paola, Kansas, eighty-one sacks of wool, to be carried by the defendant as a common carrier of goods, to the city of Philadelphia, Pennsylvania, there to be delivered by the defendant to W. C. Houston, jr., & Co., and that the defendant failed to carry two of such sacks of wool, or to deliver them to W. C. Houston, jr., & Co., or to anyone else for the plaintiff, or to account for them in any other manner to the plaintiff.

The defendant, in answer to the plaintiff's petition, admitted that it was a common carrier of goods from the city of Paola, Kansas, to the city of St. Louis, Missouri; denied that it ever agreed to carry said wool to the city of Philadelphia, or to deliver it to the consignees; but admitted that on October 20, 1881, the plaintiff delivered to the agent of the defendant, at Paola, Kansas, eighty-one sacks of wool, and that the defendant agreed to carry the wool from Paola, Kansas, to its station at St. Louis, Missouri, the terminus of its road, and there deliver the same to some responsible carrier on the route from St. Louis to Philadelphia. The defendant further alleged that it performed all things which it had agreed to perform; and it attached copies of the bills of lading for the wool to its answer, and made them a part thereof. The bills of lading mentioned in the defendant's answer were receipts for the wool, signed by the agent of the defendant only, and showed that the wool was to be carried from Paola, Kansas, to "St. Louis station," and showed that the consignees were W. C. Houston, jr., & Co., Philadelphia, Pennsylvania.

The plaintiff, in reply to defendant's answer, denied each and all matters set forth therein which were inconsistent with the allegations of his petition. Judgment was rendered in favor of the plaintiff and against the defendant for the sum of $198.25, the value of the two sacks of wool, and costs. This judgment the defendant now seeks to have reversed by this court.

About the only contested question of fact in the case is,

whether the wool was to be carried to Philadelphia, Pennsylvania, or only to St. Louis. Upon the pleadings, the evidence, and the findings of the jury, we think it must be held that the wool was to be carried to Philadelphia, Pennsylvania. Upon the pleadings, the evidence, and the findings of the jury, we think the facts, stated briefly, are substantially as follows: In October, 1881, the plaintiff and defendant entered into a parol contract that the defendant should carry the plaintiff's wool from Paola, Kansas, to Philadelphia, Pennsylvania, at a certain price per hundred weight as compensation; that under and by virtue of this parol contract, the plaintiff, on October 20, 1881, delivered to the defendant eighty-one sacks, containing 18,592 pounds of wool. After the wool was all delivered and put into the defendant's cars, and the cars locked, the defendant's agent handed to the plaintiff the bills of lading, which showed, as before stated, that the wool was to be carried from Paola, Kansas, to "St. Louis station." The plaintiff did not read the bills of lading, but merely glanced at them to see that the number of sacks of wool and the weight were correct, and that the consignees were W. C. Houston, jr., & Co., Philadelphia, Pennsylvania. He believed that the wool was to be carried to Philadelphia, and did not know that the bills of lading indicated anything else.

We think there can be but little dispute about these facts. Prior to the time of making the contract, the plaintiff asked an agent of the defendant what he would charge him for carrying wool "to Philadelphia on a through bill of freight." The agent answered that he would have to telegraph to St. Louis. Afterward the agent handed the plaintiff a paper showing the rate at which they would carry wool from Paola to Philadelphia. There was nothing said about carrying the wool to St. Louis, or about the price of carrying the wool to St. Louis, or about the price from St. Louis to Philadelphia, or about St. Louis being the terminus of the defendant's railroad; and there is nothing in the record that shows that the plaintiff knew at the time where the defendant's railroad did

terminate. The entire conversation was about carrying the wool from Paola to Philadelphia, and the price fixed for carrying the wool was from Paola to Philadelphia. Afterward, when the wool was delivered, the name of the consignees, "W. C. Houston, jr., & Co., Philadelphia, Pennsylvania," with the number of their place of business, was marked on each sack. The plaintiff offered to pay for carrying the wool through to Philadelphia, but the agent would not receive the same, but said that "they would collect it at Philadelphia." The agent said nothing at the time, or at any other time, about carrying the wool only to St. Louis, or that they would collect the freight at that point, or only to that point; but in fact said that "they would collect it at Philadelphia." At Philadelphia, a larger amount was collected for carrying the freight than was agreed upon between the parties. Afterward the plaintiff demanded of the defendant that it should refund the excess, and the company refunded such excess.

As before stated, the wool was delivered by the plaintiff to the defendant on the original parol contract, and upon a contract to pay a particular price per hundred for carrying it, from Paola to Philadelphia. Now if these bills of lading which were afterward handed by the agent of the defendant to the plaintiff were to supersede the original contract, then what was the plaintiff to pay the defendant for carrying the wool from Paola to "St. Louis"? Certainly not the original contract price, for the wool was to be carried through to Philadelphia for such price; and certainly not the schedule price, or what might afterward be found to be a reasonable price, for there was a special contract as to what the price should be. The plaintiff testified that there was a rate agreed upon from Paola to Philadelphia, and the company admitted the same by refunding the overcharge collected at Philadelphia.

We think it is clear from the evidence and the findings of the jury, that there was an original parol contract to carry the wool from Paola to Philadelphia at a settled price, before the wool was delivered under such contract, and before any bills of lading were made out or delivered to the plaintiff, and that

it is the parol contract which must determine the rights of the parties in this case, and not the bills of lading. There is nothing in the whole record of the case to show that the plaintiff acquiesced in that portion of the bills of lading which stated that the wool was to be carried to "St. Louis station," except that the plaintiff received the bills and made no objection; but, as he states in his testimony on the trial, he did not read the bills, and did not know that they apparently changed the original contract between the parties.

Upon this view of the case, we think the plaintiff is entitled to recover. We have examined the authorities cited by the plaintiff in error, defendant below, and do not think that any of them conflict with this view, while the cases of *A. M. U. Ex. Co. v. Schier*, 53 Ill. 140, and *Rld. Co. v. Manu'g Co.*, 83 U. S. (16 Wall.) 319, are in harmony with this view. Of course bills of lading are *prima facie* evidence of what the contract was between the parties, and it devolved upon the plaintiff to show that the contract apparently shown by the bills of lading was not the contract upon which the wool was delivered to the defendant for transportation. If no previous contract had been made between the parties, the bills of lading would be conclusive evidence as to the character of the contract between the parties. And possibly, if the defendant or its agents had called the attention of the plaintiff to the particular words in the bill of lading showing that the wool was to be carried to "St. Louis station," or if the plaintiff at the time of receiving the bills of lading had read the same and made no objection thereto, the bills of lading might be considered as conclusive evidence of the character and extent of the contract between the parties. But a bill of lading signed by one party only, read by one party only, and understood by one party only, can hardly be held to overturn and destroy a previous contract entered into by and between both the parties, when the original contract has been principally executed and fulfilled on the part of one of the parties, and by that one who did not understand the contents of the bill of lading, and who is to suffer if the original contract is to be con-

sidered as overturned and destroyed. After the plaintiff's wool was loaded upon and within the defendant's cars, and the cars locked, it was hardly the proper time for the defendant to attempt to change the original contract.

We think there are no other questions which require comment in detail.

The judgment of the court below will be affirmed.

All the Justices concurring.