DAVIS, RESPONDENT, *v.* MORGAN, CONSTABLE, APPELLANT.

[Submitted January 26, 1897.   Decided February 1, 1897.]

*Conversion—Fraudulent Conveyance—Instructions, Evidence, Attorney and Client.*

FRAUDULENT CONVEYANCE—*Instructions—Action for conversion.*—The defendant, a constable, justified under an execution against plaintiff's grantor, alleging that the sale was a conspiracy to defraud the creditors of the vendor, to which plaintiff was a party; evidence tending to sustain this defense was introduced. *Held*, that it was error to refuse a request for an instruction that "if the jury believe from the testi-

mony that the sale  *  *  *  was not made in good faith, but was made for the purpose of hindering and defrauding the creditors of Mrs. Meyers, then your verdict should be for the defendant ; '' and this error is not cured by a charge to the jury concerning ownership, but which does not refer to the *bona fides* of the sale.

SAME—*Evidence—Cross-examination.*—It was proper to sustain objection to questions upon cross-examination of plaintiff's witnesses asked for the purpose of proving the affirmative defense set up in the answer.

ATTORNEY AND CLIENT.—M testified that he consulted S as an attorney; S advised M but did not consider himself as the attorney of M and did not charge any fee for his opinion. *Held*, that the testimony of S concerning the conversation of M at the time was properly stricken out, for the reason that the evidence established the relation of attorney and client.

*Appeal from District Court, Cascade County. C. H. Benton, Judge.*

ACTION by W. H. Davis against W. M. Morgan, as constable, for conversion of property. Judgment for plaintiff, from which, and from an order denying a motion for a new trial, defendant appeals. Reversed.

Statement of the case by the justice delivering the opinion.

Conversion charged against the defendant by the plaintiff because of the wrongful acts of the defendant in taking a stallion from the possession of the plaintiff. The defendant denied plaintiff's ownership and interest in the horse, and pleaded a justification by virtue of a sale of the horse made pursuant to judgment and execution in a suit against Della May Meyers, by Rhubottom & Gilchrist. The defendant also pleaded that plaintiff, who was a brother of Della May Meyers, and A. D. Meyers, the husband of Della May Meyers, conspired with Della May Meyers to prevent the said Rhubottom & Gilchrist from collecting their debt, and that plaintiff's claim to the horse was fraudulent, and was made with intent to hinder and delay the creditors of said Della May Meyers, and especially the firm of Rhubottom & Gilchrist, and that plaintiff has no right, title, or interest in the horse. The case was tried to a jury, and a verdict and judgment rendered for plaintiff. The defendant moved for a new trial, which motion was denied. The appeal is from the judgment and the order denying the motion for a new trial.

*Largent & Huntoon,* for Appellant.

*W. G. Downing*, for Respondent.

HUNT, J.—There was testimony introduced on the trial to the effect that W. H. Davis, plaintiff herein, and Della May Meyers were brother and sister, and that on October 16, 1894, Mrs. Meyers sold to plaintiff, in consideration of $300, the horse in question. At the time of this alleged sale, Mrs. Meyers executed a written bill of sale to plaintiff. The horse appears to have been delivered to plaintiff, Davis. Upon January 8, 1895, Rhubottom & Gilchrist sued Della May Meyers in a justice's court to recover the sum of $55 for some work and labor done by them for her in April, 1893, and recovered judgment therefor on January 12, 1895. Under an execution issued from the justice's court, Morgan, the defendant, as constable, levied upon the stallion as the property of Mrs. Meyers, and sold him for the sum of $90. Upon January 30, 1895, Della May Meyers executed to the plaintiff, W. H. Davis, a second bill of sale of the horse. No property was included in this last bill of sale except the horse in question; the only difference between the two being that the second one was more formal in its recitals, and contained a more complete description of the animal. The testimony of plaintiff, Davis, was substantially that he had bought the horse from Mrs. Meyers, and that the reason for the execution of the second bill of sale was to cure any possible defects in the legal form of the first, but that he had owned and been in possession of the horse from the time of the execution of the first bill of sale. The defendant, on the other hand, offered testimony tending to prove that in the latter part of December, 1894, the plaintiff, Davis, had stated, in response to a question put to him by a person who wished to buy the horse for a man at Cascade, that he did not own the horse; that his sister, Mrs. Meyers, owned him, but that he thought he could be bought cheap. The purpose of this testimony was plainly to sustain the allegations of defendant's answer that the plaintiff's claim to the horse was made with intent to hinder, delay, and defraud the creditors of Della May Meyers, and for such pur-

pose it was clearly admissable, and properly went to the jury. In accordance with this theory of the defense, the court was asked by defendant to instruct the jury, among other things, as follows:    "If you believe from the testimony that the alleged sale of the horse in question to the plaintiff by Mrs. Meyers was not made in good faith, but was made for the purpose of hindering, delaying, and defrauding creditors of the said Mrs. Meyers, then your verdict should be for the defendant."    The court refused to give this instruction, and this refusal is assigned as error.    The assignment is well-founded.    In the charge of the court the jury were told that if they believed that, at the time the defendant levied upon the horse, plaintiff was not the owner, then their verdict should be for the defendant, while, if they found that plaintiff was the owner, their verdict should be accordingly.    But, aside from this general charge upon the question of the ownership of the horse, there is no reference anywhere throughout the instructions made by the court upon the issue of the *bona fides* of the transaction between the plaintiff and his sister, Mrs. Meyers.    It is easy to see how the jury may have been misled by this omission of the court, because they may have believed that the delivery of the horse, of itself, and possession by plaintiff, constituted ownership, regardless of whether or not such a transfer was fraudulent, and made solely with a view to defeat the collection of the judgment held by Rhubottom & Gilchrist.

As the case must be tried again, we will very briefly indicate our views upon several other errors assigned by the appellant.

Upon the cross-examination of several witnesses, the defendant asked several questions for the purpose of making out the conspiracy alleged in his answer.    Objections to all such questions were sustained by the court for the reason that they were not proper cross-examination.    We think the court ruled properly in this matter.    Fraud and conspiracy were affirmative defenses, and it was incumbent upon the defendant to introduce testimony of his own to sustain these allegations, and

it was improper for him to attempt to prove his affirmative averments in these respects by cross-examination of plaintiff's witnesses.

Testimony was introduced by defendant tending to show that Mr. Meyers, the husband of Mrs. Meyers, consulted Samuel Stephenson, Esq., an attorney at law at Great Falls in relation to how the horse could be transferred in order to escape a levy of execution by Rhubottom & Gilchrist, who had a judgment against Mrs. Meyers. Mr. Stephenson himself says that he advised Meyers, but that he did not consider this consultation and advice such as to constitute the relation of attorney and client, that nothing was said about a fee, and that he did not regard himself as Mr. Meyers' attorney when he did advise him in relation to the matter. Meyers says however, that he did consult him as a lawyer, and for the purpose of securing his professional opinion of how to transfer another and entirely different horse. The court struck out the testimony of Stephenson on the motion of plaintiff, based upon the ground that the relation of attorney and client existed between Stephenson and Meyers at the time the communications testified to were made. In this action of the court we find no error, for we think it sufficiently appears from the testimony of Mr. Stephenson himself that the communications made by Mr. Meyers to him, and his advice thereon, were had and given in the course of professional employment, and that, therefore, he could not be examined as to any such communications or advice without the consent of his client Meyers. (Code of Civil Procedure, § 3163, subd. 2.) There can be no question that Meyers communicated with Stephenson so as to obtain from him the advice of one possessed of knowledge of the law. He wanted the opinion of a lawyer, and of how to legally protect the horse in question, or some other horse, from seizure. He therefore naturally went to one whose profession qualified him to give the proper advice, and Mr. Stephenson gave him his opinion. It is true that Mr. Stephenson disclaims having acted in a professional capacity, but from the undisputed facts, the court correctly

decided that the relation of counsel and client existed. The omission to pay a fee is not the only test of whether such a relation may have existed. As said by the court of appeals in New York in *Bacon* v. *Frisbie*, 80 N. Y. 394 : "It matters not that he paid no immediate fee; nor that suit was then pending, or then contemplated. Communications made to an attorney in the course of any personal employment, relating to the subject thereof, and which may be supposed to be drawn out in consequence of the relation in which the parties stand to each other, are under the seal of confidence, and entitled to protection as privileged communications. (*Williams* v. *Fitch*, 18 N. Y. 551.) All communications made by a client to his counsel for the purpose of professional advice or assistance are privileged, whether they relate to a suit pending or contemplated, or to any other matter proper for such advice or aid. (*Britton* v. *Lorenz*, 45 N. Y. 51.) And, whenever the communication made relates to a matter so connected with the employment as attorney or counsel as to afford presumption that it was the ground of the address by the client, then it is privileged from disclosure. (*Turquand* v. *Knight*, 2 Mees. & W. 98.)" The judgment and order appealed from are reversed, and the cause is remanded for a new trial.

*Reversed.*

PEMBERTON, C. J., and BUCK J., concur.