SMITH, RESPONDENT *v.* CALDWELL, APPELLANT.

[No. 1054.]

[Submitted March 3, 1899.  Decided March 27, 1899.]

*Execution—Sheriff's Sale—Estoppel of Owners—Attorneys —Confidential Communications.*

1.   The silence of the owner of property, after a wrongful seizure of it as the property of another, where not in any way inducing the seizure or sale by the sheriff, or otherwise deceiving him, or done with intention to mislead or deceive him, does not estop the owner from suing the sheriff for the value of the property.
2.   Any communication made to any attorney by a client seeking advice from him, either upon payment of compensation, or without it, touching the matter with reference to which the advice is sought, is privilged.
3.   Information incidentally obtained by one while acting merely as a scrivener in drawing up a deed, though he is also an attorney, where advice had not been asked of him and he gave none, is not privileged.

*Appeal from District Court, Gallatin County; Frank Henry, Judge.*

ACTION by Fred W. Smith against White Caldwell.  From a judgment for plaintiff, and from an order denying a new trial, defendant appeals.   Reversed.

Statement of the case by the Justice delivering the opinion.

Action for damages for a conversion of personal property. On May 7, 1895, one Horace T. Kelly was the owner of certain mares (four in number); of an undivided two-thirds interest in growing crops of barley, wheat and oats upon sections 24, 25, 26 and 36, all in township 3 S. of range 4 E., amounting to about 200 acres; and of an undivided one-half interest in the crops of the same description growing upon section 19 in township 3 S. of range 5 E.,—all situate in Gallatin county, Montana. By bill of sale executed and delivered on that date, he sold this property to one Robert Almich for the sum of $2,000, and took his negotiable promissory note therefor, payable on October 1st thereafter, with interest at 1 per cent. per month until maturity, and 1¼ per cent. thereafter until payment. On June 10th following, the said Almich, to secure the payment of this note, executed and delivered to the said Kelly a chattel mortgage upon all the property so purchased by him, which was properly acknowledged and filed for record on the next day with the clerk of Gallatin county. At the time of these transactions both Kelly and Almich were living upon the land above described, in separate houses, at a distance of four feet apart. On the 27th of the preceding March, Almich had leased from Kelly the lands above described, in sections 25, 26 and 36, by a written lease, under the terms of which Kelly was to do the plowing, furnish feed, the teams necessary to put in crop, and what machinery he had; to pay one-third of the twine bill and two-thirds of the threshing bill; and to dictate when seeding, irrigating, harvesting and threshing was to be done, and where the threshing was to be done. Almich was to bear all expenses of crop, including repairs, to perform all labor necessary to mature and thresh the crop, to stack the straw in good shape and to furnish all machinery belonging to him. Kelly's share of the crop was to be two-thirds of the product in granary or in sacks, at his option. On the 23d of the preceding April, Kelly had leased to one John H. Watts the land above described, in section 19, to be worked by Watts for that season under somewhat similar conditions to those in the

Almich lease. Kelly's share of the crop to be raised by Watts was one-half. The shares under these leases were the growing crops involved in the transactions between Kelly and Almich. After the sale and mortgage were made, Kelly and Almich continued to live and work upon the crop as before; Kelly carrying out his agreements under the leases to Watts and Almich. Kelly was indebted to various parties and, among others, to the plaintiff herein and John H. Black. On August 20th Kelly sold the Almich note to the plaintiff herein for the sum of $1,380. This sum was paid by Smith by the assumption on his part of indebtedness of Kelly to the amount of $422.50, the cancellation of $7.50 due himself from Kelly, a credit of $800 upon another note held by Smith against Kelly, and a transfer to Kelly of $150 worth of cattle. At this time the crops were partially harvested, but no part of them threshed:

On August 22d, John H. Black brought suit against Kelly in the District Court of the Ninth Judicial District, at Bozeman, in Gallatin county, to collect the debt due from Kelly to him, and caused an attachment to issue. Under this attachment the defendant herein, as sheriff, seized the crops and two of the mares mentioned in the mortgage, as the property of Kelly. Afterwards, on September 20th, Black recovered judgment against Kelly for the sum of $2,557.20, with costs. On October 7th thereafter, all the property was sold under execution to satisfy this judgment. On August 27th, after the levy of the attachment by defendant, Almich made his affidavit of claim to the property, and served it upon defendant, but defendant refused to release it. The plaintiff made no demand for the release of the property, but after the sale demanded of the defendant, in writing, the payment of the Almich note, with interest.

Defendant in his answer attacks the transaction between Almich and Kelly on the alleged ground that it was fraudulently designed to hinder and delay the creditors of Kelly. He also alleges that the plaintiff purchased the Almich note, with full knowledge of its fraudulent character, to aid the

plans of Amich and Kelly. His failure to notify the defendant that he was the assignee of the Almich note until after the sale of the mortgaged property, though he knew of the levy, it is claimed, estops him from insisting that he has been damaged.

The cause was submitted to a jury. Plaintiff recovered a verdict and judgment for $1,953.23, with costs. From this judgment, and an order overruling his motion for a new trial, defendant appeals.

*Luce & Luce,* for Appellant.

Instructions 21 and 22, refused by the court, were asked to present to the jury the question of estoppel and no instruction whatever on this proposition was given. The facts conclusively show that Smith did not make his interest known to the defendant at any time until after the property had been sold under execution and then only made a demand for the value of the note and never for the return of the property or its value. Smith knew of the attachment and was served with garnishment. He had been expecting the sheriff. The allegation in the answer that Smith had notice of the writ of attachment and the seizure of the property thereunder is not denied. The demand upon the sheriff was made after the money realized from the sale under execution had been applied upon the judgment against Kelly. His conduct clearly estopped him. (Beach on Modern Equity Jurisprudence, Sec. 1106; *Chapman* v. *Chapman,* 59 Pa. St. 214; *Holter* v. *Wassweiler,* 19 Mont. 169; Rice on Evidence, Vol. 2, 724). The original seizure was in no way a conversion. The interest mortgaged in the Almich mortgage was an undivided two-thirds and the sheriff was obliged to seize the whole of the crop.

It is the duty of the sheriff when he holds an attachment against the owner of an undivided share of chattel property to seize the whole of the property. (Murfree on Sheriffs, Sec. 267, and cases cited; *Veach* v. *Adams,* 51 Cal. 609, and citations). It has been held that a mortgagee of personal prop-

erty, not in possession, who is present at a sale of such property by the mortgagor to another, and such mortgagee on being asked to fix the price between the mortgagor and purchaser, does not notify the purchaser of his mortgage and the property is afterwards delivered to the purchaser, the mortgagee cannot recover the property as against such purchaser without notice. (Herman Estoppel and *Res Adjudicata*, Secs. 929 and 735; *Brooks* v. *Record*, 47 Ill. 30; *Lloyd* v. *Lee*, 45 Ill. 277; *Kane Co.* v. *Herrington*, 50 Ill. 232; *Edgerton* v. *Thomas*, 9 N. Y. 40). The mortgage from Almich to Kelly, being fraudulent, the property was subject to attachment as Kelly's and the sheriff could justify under the attachment. (*Munns* v. *Loveland*, 49 Pac. 743 Opin. 745, (a case very much like this); *Fisher et al.* v. *Kelly*, 46 Pac. 146, a strong case). If it was proper to submit the alleged fraud to the jury so also should the court have submitted the question of estoppel. See also upon the question of estoppel *Stewart* v. *Hovey*, 26 Pac. 683 Opin. on rehearing p. 685.

*Holloway & Hoffman*, for Respondent.

We insist that the record shows (Record 136-138) that the testimony proposed to be elicited, was the substance of a conversation had by Kelly and Almich with the witness Stevenson, and in the capacity of an attorney, and that whatever knowledge he got, he acquired by reason of his relationship as such attorney.

Stevenson says (Record 137, line 17): "I will state to the court that whatever knowledge I acquired, I certainly acquired acting in the capacity of an attorney for the parties to the mortgagee."

In an action between Kelly and Almich, the communication would not be privileged; but as between either of them and any third party, or as between third parties, as in the case at bar, the communication is privileged. (*Britton* v. *Lorenz*, 45 N. Y. 56). And the communication is privileged under all circumstances unless waived by the client, and such waiver must be distinct and unconditional. (19 Am. and Eng. Ency. Law, p. 133; *Guber* v. *Baker*, 23 Pac. 858).

**BRANTLY, C. J.**—1.   Appellant earnestly contends that the evidence is not sufficient to sustain the verdict, and that the court below should have granted a new trial on this ground. As the case must be reversed and a new trial ordered on other grounds, we shall not review the evidence.   Upon another trial it may present different aspects, and any suggestion by us in this regard might tend to prejudice the rights of the parties.

2.   The defendant in his answer alleges that, from the date of the seizure of the property in controversy until the sale thereof under the execution to satisfy the judgment in the cause of Black against Kelly, the plaintiff had actual knowledge that the property had been seized, but that he allowed it to be sold, and the proceeds to be applied upon the judgment, without giving defendant any notice, or making any claim for it.   It is insisted that, by this knowledge and silence on his part, plaintiff is estopped to maintain this suit for its value.

The court below was requested to instruct the jury that, if they found these facts from the proof, they should find a verdict for defendant.   The court refused the instruction.   This refusal of the court to so instruct the jury is assigned as error. The court was right.   The facts stated in the answer are not sufficient to constitute a defense by way of estoppel.   There is no averment that the plaintiff's silence in any way induced the defendant to seize or sell the property in controversy. Nor is there any other fact stated which shows that the defendant was in any way deceived or misled by the plaintiff, or that the silence of the plaintiff was designed or intended by him to mislead the defendant.   (*Sweetman* v. *Ramsey*, 22 Mont. 323, 56 Pac. 361, and authorities cited; *Barnhart* v. *Fulkerth*, 93 Cal. 497, 29 Pac. 50; *Bowman* v. *Cudworth*, 31 Cal. 148; 2 Pom. Eq. Jur. Sec. 812; Rice, Ev. pp. 716-719.) Besides, if the defendant wrongfully seized property belonging to plaintiff, and appropriated it to the satisfaction of Black's claim, he was a trespasser *ab initio*, and does not stand in the attitude of an innocent party who has incurred a liability or acquired a right through any inducement held out by

the plaintiff, or the silence of plaintiff when the duty rested upon him to speak. The defendant acquired no right by any act done by him in the case of Black against Kelly, nor did he incur any liability which he would not have incurred but for his own wrong. The silence of plaintiff after the wrongful seizure forfeited none of his rights, nor did it any way remedy the original wrong. (2 Pom. Eq. Jur. Sec. 812; *Schilling* v. *Black* (Kan. Sup.) 31 Pac. 143; *Donnell* v. *Reese* (Kan. App.) 51 Pac. 584.)

3. During the trial the defendant offered W. J. Stephenson as his witness. Stephenson had drawn the mortgage from Almich to Kelly, both having gone to him to secure his services for this purpose. He objected to testifying on the ground that what he learned about the transaction at that time was by virtue of his relation to those parties, as their attorney. The testimony sought to be obtained from him, as appears from the offer to prove made by counsel, was a statement made by Kelly, in the presence of Almich, that the mortgage was being made for the purpose of defrauding Black, and to hinder and delay Kelly's other creditors, or words of like import. The witness was examined as to the relation he at that time sustained to Almich and Kelly. It appeared that Stephenson is an attorney at law, and was at that time a justice of the peace and notary public. Almich and Kelly came to him to draw the mortgage, bringing with them a memorandum of what was to be embraced in it, and a description of the premises upon which the property was situated. Stephenson had a conversation with them about the matter, and thereupon drew the mortgage. So far as the record reveals what took place, they asked no advice of Stephenson, nor did he give them any. They had already determined upon what they would do before they sought his services. He did not advise them what to do, or how to do it. He charged them for what he did. Plaintiff waived his objection to the proof, but the court excluded it. Defendant excepted to this ruling of the court, and assigns it as error. "An attorney cannot, without the consent of his client, be examined as to

any communication made by the client to him, or his advice given thereon in the course of professional employment." (Code of Civil Procedure, Sec. 3163, Subd. 2.) It has been held by this Court (*Davis* v. *Morgan*, 19 Mont. 141, 47 Pac. 793) that this rule applies where one seeks advice upon communications made to an attorney, as such, even though the advice sought is for the purpose of aiding the client to evade his creditors. The test here applied to determine whether the relation of attorney and client existed is whether advice was sought from the attorney professionally, either upon payment of compensation, or without it. Any communication made under such circumstances touching the matter with reference to which the advice is sought is privileged. "Knowledge acquired during the time the relation exists is not privileged unless it is acquired in the course and for the purpose of his (the attorney's) employment." (*Satterlee* v. *Bliss*, 36 Cal. 489.) The party seeking to suppress the evidence must sustain the burden of showing that it comes within the rule. (*Carroll* v. *Sprague*, 59 Cal. 655.) "And it must appear that the witness learned the matter only as counsel or attorney or solicitor for the party, and not in any other way, and that it was received professionally and in the course of business." (*Sharon* v. *Sharon*, 79 Cal. 633, 22 Pac. 26, 131.) The communication must be confidential, and so regarded, at least by the client, at the time. (*Id.*) See, also, *Gallagher* v. *Williamson*, 23 Cal. 332; *Hatton* v. *Robinson*, 14 Pick. 416, s. c. 25 Am. Dec. 415; *Hebbard* v. *Haughian*, 70 N. Y. 54; *Caldwell* v. *Davis*, 10 Colo. 481, 15 Pac. 696; *Mutual Life Insurance Co.* v. *Corey*, 54 Hun. 493, 7 N. Y. Supp. 939; *Todd* v. *Munson*, 53 Conn. 579, 4 Atl. 99; *De Wolf* v. *Strader*, 26 Ill. 225; *Smith* v. *Long*, 106 Ill. 485; *Borum* v. *Fouts*, 15 Ind. 50. From the examination of the witness Stephenson, as shown by the record, it appears that he acted in the transaction about which he was asked, not as counsel to whom Almich and Kelly went to obtain advice, but as a scrivener only. What he learned seems to have been a mere incident to the ministerial office of writing the instrument, and the notarial work of au-

thentication for record.    Information obtained in this way is not privileged, even though the scrivener be an attorney at law. . (See authorities cited *supra*.)  ·It is commendable in an attorney to guard carefully the :confidences of his clients,— nay, it is his solemn duty to do so; but he must also hold himself ready to take up his duties to others at the point where his duty to his client ends, and give them the benefit, when the necessity arises for it, of the facts within his knowledge. We think, upon the record as it appears before us, the court erred in not requiring him to answer.    For this error a new trial must be granted, because it is impossible to tell how a jury might view the case with this evidence before them.

4.    Several other errors are assigned, but of these we shall note only one.    Defendant makes the contention that there was no evidence before the jury on the question of damages which warranted the court in submitting the case to them at all.    This contention is not supported by the record.    There was ample evidence from which the jury could determine the value of the property at the time it was seized, or at any time up to the rendition of the verdict.    The court properly instructed the jury as to the measure of damages, under Section 4333 of the Civil Code,—that, if they found for the plaintiff, they should fix the amount found at the highest market value of the property at any time between the date of the conversion and the verdict.    There was no request for any more specific instructions on this subject, but we would suggest that the jury should have been told that from the gross value there should have been deducted the cost of finishing the harvesting, and the threshing bill paid by defendant.

Let the judgment and order be reversed, and the cause remanded, with directions to grant a new trial.

*Reversed and remanded.*

HUNT and PIGOTT, JJ., concur.