GARRETT, RESPONDENT, *v.* CITY OF BUTTE, APPELLANT.

(No. 5,339.)

(Submitted November 16, 1923.   Decided December 12, 1923.)

[221 Pac. 537.]

*Personal Injuries—Physicians and Surgeons—Privileged Communications—Inapplicability of Rule.*

Physicians and Surgeons—Privileged Communications—Rule.
    1.   To render statements made to a physician by his patient privileged under section 10536, Revised Codes of 1921, they must have related to the particular injury or disease and been necessary to enable the former to properly prescribe for the latter or act in his pofessional capacity.

Personal Injuries—Physicians and Surgeons—What are not Privileged Communications.
    2.   *Held*, under the above rule, that a statement made to a staff physician at a hospital by plaintiff in an action for personal injuries sustained by a fall on an icy sidewalk immediately after the accident, that she fell at a place different from the one alleged in the complaint, was not privileged, and that rejection of an offer of proof to that effect was reversible error.

*Appeal from District Court, Silver Bow County; Wm. E. Carroll, Judge.*

ACTION by May Garrett against the City of Butte.   Judgment for plaintiff and defendant appeals.   Reversed and remanded.

*Mr. J. T. Andrew* and *Mr. F. E. Blodgett,* for Appellant, submitted a brief; *Mr. Blodgett* argued the cause orally.

Citing *People* v. *Austin,* 199 N. Y. 446, 93 N. E. 57; *Missouri Pac. Ry. Co.* v. *Castle,* 172 Fed. 841, 97 C. C. A. 124; *Green* v. *Terminal R. Assn. of St. Louis,* 211 Mo. 18, 109 S. W. 715; *Booren* v. *McWilliams,* 26 N. D. 558, Ann. Cas. 1916A, 388, 145 N. W. 410; *Madsen* v. *Utah Light & Ry. Co.,* 36 Utah, 528, 105 Pac. 799.

---

1.   Necessity that information communicated to physician should be necessary for treatment in order to be privileged, see notes in 15 Ann. Cas. 582; Ann. Cas. 1916A, 403.

*Mr. J. H. Freebourn* and *Mr. T. E. Downey,* for Respondent, submitted a brief; *Mr. Freebourn* argued the cause orally.

Citing: 21 R. C. L., p. 376; 40 Cyc. 2386, 2395, 2396; *May* v. *Northern Pac. Ry. Co.,* 32 Mont. 522, 4 Ann. Cas. 605, 70 L. R. A. 111, 81 Pac. 328; 4 Jones on Evidence, 553–555, 558; *Munz* v. *Salt Lake City R. Co.,* 25 Utah, 220, 70 Pac. 852.

MR. JUSTICE GALEN delivered the opinion of the court.

This is an action for damages on account of personal injury alleged to have been sustained by the plaintiff January 4, 1922, by reason of falling on an accumulation of ice and snow on the sidewalk adjoining a warehouse occupied by the Goodyear Tire Company on the west side of Nevada Avenue near the corner of Iron Street, in the city of Butte. The complaint designates the place complained of where the accident occurred as being located on the west side of Nevada Avenue extending southward from Iron Street a distance of twenty-five feet. Issue was joined by defendant's answer in the nature of a general denial and the cause was tried to a jury, which returned a verdict for plaintiff of $4,000. Judgment was entered on the verdict and a new trial denied by the court. The appeal is from the judgment. The only question presented is whether the court erred in excluding the offered testimony of Dr. George T. McPherson by reason of its being a privileged communication. Counsel for both parties are agreed on this.

It is the city's contention that the plaintiff fell at a different place than that alleged in her complaint. The sidewalk in question is constructed of cement and is six and one-fourth feet wide and begins at the northeast corner of the warehouse. It appears that there is no sidewalk on Iron Street west of Nevada Avenue, and the grade east of the intersection is fourteen and a half per cent. On the north side of the warehouse on Iron Street is a wooden loading platform used to load produce from the warehouse, seventy-seven and six-tenths feet in length and six and one-fourth feet in width at the east

end of the platform, leading up to which there are eight steps at the east end as it parallels the north side of the warehouse. It appears that the plaintiff after her injury was picked up north of the center of Iron Street. As to her then position, she explained that she crawled twelve or fifteen feet from the place where she fell. There are no exhibits before us, and as near as we can figure out from the testimony, the following plat fairly illustrates the situation as we understand it:

The city called Dr. McPherson as a witness to prove its contention that she fell at a different place than that claimed by her. He is a physician and surgeon and a member of the Murray Hospital staff in the city of Butte. After Mrs. Garrett's injury on the morning of January 4, 1922, she was taken immediately to the Murray Hospital, where it appears she made inquiry for Dr. Kistler, whom she stated she wished to have attend her. Dr. Kistler being out at the time, Dr. McPherson was called, made a cursory examination of her, and ordered that an X-ray picture be taken for Dr. Kistler's use. Afterward he assisted Dr. Kistler in the operation and called to see the defendant once or twice during her stay at the hospital.

The plaintiff in support of her complaint testified on cross-examination: "After I got to the Murray Hospital, they took down a statement from me, asked me questions and took down a statement as to my place of residence and some other questions along that line. It was Dr. McPherson did that. When I got to the hospital, I asked for Dr. Kistler. He wasn't in at that time. I do not remember that Dr. McPherson took a statement from me, asked me questions and took a statement from me. He just sat there and talked to me, said a few words; he didn't take any statement; he was just waiting for Dr. Kistler. He sat there and talked a little while. I did not tell Dr. McPherson at that time that I fell on Iron, and my right ankle doubled under me, and I couldn't get up on account of the severe pain."

In the course of the conduct of defendant's case, counsel [1, 2] for defendant asked the witness McPherson the following question: "Q. Did she ever make any statement to you; did she ever make any statement to you concerning the place in the city of Butte where she fell?" Counsel for the plaintiff objected to the question and proceeded to disqualify the witness because of the existence of the relation of physician and patient, the statements, if any made, being privileged under the statute. The court sustained this objection, and thereupon counsel for the defendant made further inquiry of the witness with the result disclosed by the record as follows: "The Witness: When she came in she asked for Dr. Kistler as her doctor. Q. You never undertook to treat her, then, or act for her as her physician? A. No, sir; I only did what I knew Dr. Kistler would do if he were there. Q. Well, what you did was merely order an X-ray taken? A. Order an X-ray and put the patient to bed. She never paid me anything. Q. Now, even if you had been her physician, it wouldn't have been necessary for you to know the place within the city of Butte where she fell in order to aid or assist you in treating her at all, would it? A. No, sir; it

would not.   Q. Now, doctor, did she tell you where she fell
and received her injury?

"Mr. Freebourn: We renew our last objection to this ques-
tion; the same is wholly incompetent, irrelevant and immaterial,
and doesn't prove nor tend to prove any issue in this case;
it is hearsay, a matter, if it did occur, privileged, and the
doctor has already testified that she didn't say where she was
injured in the city of Butte.

"The Court: Not at the time of the first conversation.   (Ex-
amination by the Court.)

"The Witness: I am one of the medical staff of the Murray
Hospital at this time.   It is part of my business to assist in
the treatment of people coming there for treatment.   Q. Did
this conversation take place during the time that Mrs. Garrett
was there under treatment at the hospital, if any conversation
took place?   A. Yes, sir; it did.

"The Court: Objection sustained, on the ground it is privi-
leged.

"Mr. Cavanaugh: Well, if the court please, we will make
an offer of proof."

Thereupon offers of proof were made, to which objections
were by the court sustained for the same reason.   Such offers
are as follows:   "(1) We now offer to prove by the witness
now on the stand that the plaintiff told this witness, soon
after her arrival at Murray's Hospital, that at the time of her
fall which caused her injury her right ankle doubled under her
and she could not get up.   (2) Defendant now offers to
prove by the witness now on the stand that, soon after the
arrival of plaintiff at Murray's Hospital, plaintiff told witness
that she fell on Iron Street at time she received her injury."

The statute so far as here applicable reads: "There are
particular relations in which it is the policy of the law to
encourage confidence and to preserve it inviolate; therefore
a person cannot be examined as a witness in the following
cases:   *   *   *   (4).  A licensed physician or surgeon cannot,
without the consent of his patient, be examined in a civil action

as to any information acquired in attending the patient, *which was necessary to enable him to prescribe or act for the patient."* (Sec. 10536, Rev. Codes, 1921.)

To invoke the rule of exclusion, therefore, two things are required first to appear: (1) That the relation of physician and patient existed at the time the statements were made; (2) that the information given the physician was *"necessary to enable him to prescribe or act for the patient."*

The statute is unambiguous, and plainly applies only to information relating to the particular injury or disease required to properly *"prescribe for the patient."* The provisions of the statute alone settle the question. In view of the language employed, it would not seem that any lawyer would be heard seriously to argue that statements made by a patient to his physician concerning his place of residence, his place of birth, the names of his parents, whether he is married or single, the place where injured, the means of his conveyance to the hospital for treatment, or the like, constituted information necessary to enable the physician to prescribe for the patient. It is manifest that, were such the rule, commonplace conversations had by the patient with his physician would come under the rule of exclusion.

In the case of *May* v. *Northern Pac. Ry. Co.,* 32 Mont. 522, 4 Ann. Cas. 605, 70 L. R. A. 111, 81 Pac. 328, this court, speaking through Mr. Justice Holloway, held under the same Code provisions that a physician, without his patient's consent, cannot be examined in a civil action as to any information acquired in attending the patient necessary to enable him to prescribe, where the plaintiff admitted on cross-examination that a certain physician had attended and treated her for the injuries complained of, without detailing any conversation had with him or telling the character or extent of his treatment.

In *Smith* v. *Caldwell,* 22 Mont. 331, 56 Pac. 590, Mr. Chief Justice Brantly, quoting from California authorities, states the rule we deem applicable in language substantially as fol-

lows: Knowledge acquired during the time the relation exists is not privileged unless acquired in the course of employment for the purpose of enabling the physician to prescribe for the patient; and it must appear that the witness learned the matter professionally only in his capacity as physician in order to enable him to properly treat the patient. "The privilege extends only to matters in their nature confidential, and does not prevent a physician from testifying to matters, the disclosure of which involves no breach of professional confidence." (40 Cyc. 2384.) "To exclude the testimony of a physician the information which he is called on to disclose must have been necessary in order to enable him to act in his professional capacity; and hence where the necessary treatment is clear to the physician, regardless of how it was received, there is no privilege as to statements of the injured person to an attending physician of the circumstances attending or leading up to the injury." (40 Cyc. 2385.)

Professor Jones, in his work on Evidence, says: "The statutes of the various states regarding the disqualification of physicians to testify do not make such disqualifications general, but limit it to information acquired by them in attending patients in a professional capacity, and necessary to enable them to prescribe for their patients or to otherwise discharge their professional duties. These statutes have been variously construed, and on the one hand physicians have been compelled to testify in all cases where the communication was made to them unnecessarily, and was not for the purpose of enabling them to perform their duties to their patients; while, on the other—the minority—the word 'necessary' has received the liberal construction to which it appears in this connection to be entitled." (4 Jones on Evidence, sec. 760, p. 553.)

"The statutes of the various states regarding the disqualification of physicians to testify do not as a rule make that disqualification general, but limit it to information acquired by them in attending patients in a professional capa-

city, and necessary to enable them to prescribe for their patients or otherwise discharge their professional duties. Accordingly physicians have been compelled to testify in all cases where the communication was made to them unnecessarily, and was not for the purpose of enabling them to perform their duties to their patients. Thus, information as to the date on which injuries were inflicted or the manner in which they were received, while it may be in some cases necessary for treatment, ordinarily is not; and if the patient imparts information of that character to his physician, testimony respecting such communication may be compelled in a cause involving the injuries. And, in a suit for damages for personal injuries, claimed to have been inflicted by the defendant, a statement made by the plaintiff to a physician showing that those injuries, or some of them, existed prior to the alleged violence of the defendant, has been held admissible. The mere presence of a physician does not render inadmissible the admissions of a wounded man when not made to the physician nor connected with his professional duties. But if information as to the mode or date of the infliction of injuries is necessary for the treatment of the case, testimony respecting communications made concerning these matters is not admissible." (28 R. C. L., sec. 126, p. 536.)

As well said by Professor Wigmore, in his splendid work on Evidence: "The privilege is intended (and by most statutes is clear) to protect only those communications which are necessary for obtaining the benefits of the professional relation—in other words, for enabling the physician to prescribe remedies." (Sec. 2383, Wigmore on Evidence, 2d ed.)

We recognize the general rule that the incompetency of a physician to testify concerning information acquired while attending a person in a professional capacity extends to staff physicians connected with a hospital; but in our opinion the information obtained in order to place such evidence under the ban as respects the physician or an attending physician *must be such as is necessary to prescribe for the patient.*

It should be borne in mind that the rule providing for privileged communications has no place in the common law. It is a creature of statute which has been given recognition in a majority of the states. As illustrative of modern thought regarding the exclusion of communications made to a physician by a patient, Professor Wigmore, in his work on Evidence, gives an excellant dissertation on what he characterizes as the fundamental canons to be satisfied. He truly says: ''In only a few instances, out of the thousands daily occurring, is the fact communicated to a physician confidential in any real sense.'' His observations are pertinent and the discussion vigorous against an extension of the rule. (See sec. 2380 *et seq.*, 2d ed.)

We think the court was in error in excluding the testimony, as it was vitally important for the city to show, if such was the fact, that the plaintiff fell at a different place than that by her alleged. The evidence offered does not come within the rule of exclusion of privileged communications.

The judgment is reversed and the cause remanded to the district court of Silver Bow county for a new trial.

*Reversed and remanded.*

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES COOPER, HOLLOWAY and STARK concur.

Rehearing denied January 7, 1924.