[No. 4423. Decided December 18, 1902.]

J. S. WINDELL *et al., Respondents*, v. READMAN WAREHOUSE COMPANY, *Appellant*.

CONTRACT FOR STORAGE — WAREHOUSE RECEIPT — VARIATION BY PAROL.

Where a party has entered into an oral contract of storage with a warehouseman, such contract governs, and not the terms set forth in a warehouse receipt subsequently mailed to him and which was retained by him without noticing that it contained provisions differing from that of his oral contract, and parol evidence is admissible to show the real contract.

SAME — STATUTORY DEFINITION OF RECEIPT — EFFECT ON CONTRACTS.

The fact that Bal. Code, § 3590, defines the nature of a warehouse receipt would not preclude parties from making a contract of storage upon such terms and conditions as they choose.

Appeal from Superior Court, King County.—Hon. GEORGE MEADE EMORY, Judge. Affirmed.

*Richard Saxe Jones,* for appellant.

*E. P. Edsen, John E. Humphries* and *Harrison Bostwick,* for respondents.

The opinion of the court was delivered by

REAVIS, C. J.—Action against defendant, a warehouse company, for conversion of household goods stored by plaintiffs. The contract of storage was made by plaintiffs with one Readman, a warehouseman in Seattle, who was succeeded by the defendant company, which assumed all the obligations of the contract. The complaint alleged, in substance:

"That the plaintiffs entered into an oral agreement with the said Readman by which the plaintiffs agreed to store and did store with said Readman certain goods, wares, and merchandise, with the agreement and understanding that the plaintiffs were to be absent on an eighteen months' contract, and would not need the goods for a long time, and that the goods were to be kept in said warehouse until the plaintiffs called for them, and plaintiffs were to pay all charges upon their said goods, all of which was agreed to by the said J. C. Readman.

"That in pursuance of said oral agreement the plaintiffs delivered to the said Readman's warehouse and put into the care and custody of said Readman, eleven boxes of goods, wares, and merchandise, namely: . . . Said goods were accepted under said contract and agreement, and were left in said warehouse according to the terms and conditions of said agreement. . . .

"That the Readman Warehouse Company, defendant herein, in violation of the contract between plaintiffs and the said J. C. Readman, and without right so to do, sold, scattered, and transferred all the property and effects belonging to the plaintiffs, and converted the same to its own benefit, and disposed of the said property."

It was also alleged that plaintiffs demanded the goods of defendant, and were informed that defendant had sold

the goods for storage charges, and that the proceeds of the
sale were insufficient to satisfy such charges. The answer
admits that defendant was a warehouseman, and that the
goods, as described, were stored and received by it as stated
in the complaint, but denies that plaintiffs entered into any
oral agreement with Readman for the storage of the goods;
and as affirmative defense sets up:

"That the said Readman received the same for storage,
and executed and delivered to the plaintiffs his certain
warehouse receipt therefor, containing the terms and con-
ditions upon which the same were received for storage,
and which said warehouse receipt was in words and figures
as follows, towit:

"'Preserve this receipt and read its contents.
"'Storage.                Readman's Warehouse,
                    J. C. Readman, Proprietor.
"'801-803-805-807-809 First Avenue South, Cor. Dear-
                    born Street.
"'No. 2580.                    Telephone Main 105.
"'STORAGE RECEIPT.
"'Seattle, Washington, 16 June, 1899.
"'J. C. Readman has this day received in store from J.
S. Windell the property below described, it being hereby
understood and provided that said J. C. Readman shall not
be liable for loss thereof by fire or by action of the ele-
ments, nor for damage thereto by rats, mice, moths, or
other vermin, nor from frost, riot, war, or insurrection,
nor any unavoidable damage. Said property to be deliv-
ered at this warehouse upon the return of this receipt
properly indorsed and payment of charges for storage
thereof. This receipt negotiable when duly indorsed by
consignor, subject at all times to the conditions hereof and
the payment of all charges. Said property so received is
represented to be as follows:
"'9 boxes H. H. goods.
"'1 center table.
"'1 rocking chair.

" 'The rates of storage upon said property are as follows:

" '$1.00 for thirty days or fraction thereof. And such charges shall accrue, mature, and become due and payable every thirty days from the date of this receipt.

" 'Measurement . . . . . . . Weight . . . . . . .

" 'Any expenses or costs for cooperage, repairs, court costs, or attorney's fees accruing by reason of the receipt of and storage of said property (for reasons not expressly attributable to the warehouseman) shall be charged to and be a lien upon said property.

" 'The warehouseman does not guarantee the contents of any sealed or closed packages.

" 'Advances.

" 'Charges 25c Kamp.

" 'Expenses.

" 'Owner's valuation.

" 'Goods covered by this receipt can only be delivered on its surrender, properly indorsed by the person or firm to whom it is issued. Should it be lost or destroyed, a reliable surety company's bond in twice the amount of the owner's valuation, subject to the approval of the warehouseman, will be invariably required before duplicate receipt is issued or goods delivered.

" 'J. C. Readman.' "

It further alleges that no other or further contract was made with plaintiffs, and that, after due notice of sale, the said goods were thereafter sold to pay said storage charges; that at such sale the goods were sold for $9.75, and that the storage charges then due defendant thereon were $20.45. The goods were stored about June 16, 1899, and the sale for storage charges was made on the 26th day of March, 1901. On the trial the plaintiffs tendered evidence tending to prove the oral contract set forth in the complaint, whereupon counsel for defendant inquired for the warehouse receipt set out in the answer, which was then produced by plaintiffs, and exhibited to the court. Defend-

ant then objected to any evidence relating to the oral con-
tract on the ground that it tended to vary and contradict
the receipt given to plaintiffs. The objection was over-
ruled. The plaintiff husband was then permitted to tes-
tify and state the agreement alleged as follows:

"Q. Now you may state, Mr. Windell, what you did
with reference to storing your goods in the Readman ware-
house. A. I took goods there on June 16th—— Q. Talk
to the jury. A. On June 16, 1899, as I was about to go
to Oregon under a contract there, and in fact I was on my
way to the depot at the time. I took my goods there, and
talked to the clerk in the office—I do not know who he
was. I do not know his name—in regard to taking and
keeping the goods. Q. He was the party in charge of the
office? A. Party in the office, I do not know whether
he was the clerk, or Mr. Readman, or who he was, and he
said he would keep the goods. . . . Q. Go ahead,
and state what occurred there about leaving these goods at
this warehouse. A. I went to the warehouse in company
with a drayman who had these goods and my baggage that
I was taking with me,—trunks,—and I unloaded the goods
there; then had the conversation in the office in regard to
the goods. I went into the office to take a receipt for the
goods. The clerk said that he could not issue a receipt
now, but he could—until the goods were placed and mea-
sured so as to know what the charges—what space they
would occupy, so as to know what the charges would be.
He told me to call tomorrow for the receipt for the goods.
I told him I could not do that, as I was on my way then to
the train that was about to leave; and he says, 'We will
measure up the goods, and we will send you the receipt.'·
I says, 'All right, I will do that'; and then I gave him my
address,—what my address would be at Portland, Oregon,
—and then I says, 'About the payment of this,' I says, 'I
am going where I will be out into the mountains in the
mines, and I want to know when I am to pay for these
goods,' I says, 'I am going under a contract.' . . . 'I
am going to Southern Oregon to take charge of a mining

proposition under an eighteen months' contract. My family is with me, and if I should set up housekeeping, I will send with me, and if I should set up housekeeping, I will send for these goods in a short time; otherwise they will probably be left at the warehouse for the full term, or about that length of time, or perhaps a little longer, until I return to the city.' And with that understanding I left the warehouse, went on to the train, and they were to send me a receipt for the goods to Portland at the address which I gave, which was my permanent address. Q. What did he say about when you would pay for the storage? A. Well, I asked about the payment. As to that, he said, 'You can pay for the goods when you receive them or order them shipped away, as the case may be.'

The court instructed the jury that the burden of proof of the oral contract and its terms was upon plaintiffs, that plaintiffs had the right to make an oral contract, and the law did not compel the contract to be in writing; that, if the jury believed such contract was made, and should also believe that subsequently the warehouse receipt was mailed to plaintiffs, and retained by them, and yet it should appear that the printed matter in the receipt was unread by plaintiffs at the time it was received, that no attention was paid to its contents, and that plaintiffs did not assent to its terms at any time, then the oral contract would be controlling. The jury were also instructed that, if the warehouse receipt was delivered to plaintiffs, and they understood it at the time, and that it expressed the contract of storage, then the written contract contained in it would be controlling, and could not be varied or contradicted in any manner by the oral agreement, or any evidence thereof.

The controlling question presented on this appeal is one of law. Counsel for appellant urges with much earnestness that respondents, having received the warehouse receipt some days after the goods were stored, ought not to be

permitted to deny that they assented to its terms; that when the contract was put in writing and printing in the warehouse receipt and delivered to plaintiffs, it could not be varied in its terms by oral evidence. But the warehouse receipt was written and signed by only one of the parties, and it must embody the real contract made between the parties. This seems to be the prevailing view of the best considered decisions. In *Strohn v. Detroit & M. Ry. Co.*, 21 Wis. 562 (94 Am. Dec. 564), plaintiffs delivered to defendant, a carrier, goods to be delivered to a consignee in New York within fifteen days. The property was for shipment to Europe. This knowledge was given to the agent of the defendant orally at the time the goods were delivered to it. The defendant denied the oral contract, and alleged that the only contract made by it was contained in the bill of lading, which exempted it from the liability charged by plaintiffs. In this case it was substantially ruled that, if it should appear that the owner examined the receipt, knew its contents, and did not offer to return it, nor otherwise notify the company of his dissent, it seems that this would be conclusive evidence of his assent. But, if he had previously entered into a special oral agreement with the company for the transportation of the goods, he had a right to presume that the written or printed receipt contained nothing contrary to such agreement, and his failure to make himself at once acquainted with its contents and notify the company of his dissent should not be held to conclude him. In that case the plaintiffs offered to show such a special oral agreement, and also that the company's receipt was not delivered to them until some days after the goods were delivered to the company and shipped by it under the oral agreement. Held, that the evidence should have been admitted to rebut the presumption against them arising from their possession of

the receipt.    The same principles substantially are sup-
ported by the following cases:    *King v. Woodbridge,* 34
Vt. 565; *Bostwick v. Baltimore, etc., R. R. Co.,* 45 N. Y.
712; *Guillaume v. General Transportation Co.,* 100 N. Y.
491 (3 N. E. 489); *Swift v. Pacific Mail Steamship Co.,*
106 N. Y. 206 (12 N. E. 583); *Missouri Pacific Ry. Co.
v. Beeson,* 30 Kan. 298 (2 Pac. 496).

The warehouse receipt must be based upon the agree-
ment of the parties, or assented to by the plaintiffs.    If an
oral contract has preceded it, its terms must be embodied
in the receipt.    The vital question, then, is one of fact.
The evidence was heard and weighed by the jury under
proper instructions from the court.    If the evidence on
the part of the plaintiffs is believed, an oral contract was
made, and its terms are not embodied in the receipt, and
the terms contained in the receipt were not understood or
assented to by plaintiffs.    The statutes of the state are
cited as defining the nature of a warehouse receipt, and it
is contended that § 3590, Bal. Code, imposed upon plain-
tiffs the knowledge of the functions of such receipt, and
they should be bound conclusively by such knowledge to
know its terms.    The case of *First National Bank v. North-
ern Pacific Ry. Co.,* 28 Wash. 439 (68 Pac. 965), is cited
as pertinent here.    This case determined the negotiability
of a bill of lading issued by a carrier when in the posses-
sion of a purchaser for a valuable consideration.    There
was no question between the parties as to the validity
of the bill of lading in that case.    The statute cited does
not change the nature of the contract.    There is no pro-
hibition of contract of storage between warehousemen and
others upon such terms and conditions as they may choose
to make.    No change is made in the rights of each party
under such agreements.

The other objections raised by appellant upon the re-

jection of evidence and instructions have been examined, and no material error is perceived in the ruling of the court. The evidence was conflicting. Its weight, however, was determined by the jury in favor of the plaintiffs.

Judgment affirmed.

DUNBAR, MOUNT and ANDERS, JJ., concur.