[S. F. No. 6653.   Department Two.—December 15, 1915.]

J. S. POTTS, Appellant, v. BLITZ W. PAXTON, as Admin-istrator of the Estate of Charles Eddy Paxton, Deceased, Respondent.

[S. F. No. 6903.   Department Two.—December 15, 1915.]

FRANK H. GOULD (Substituted in the Place and Stead of J. S. Potts), Respondent, v. BLITZ W. PAXTON, as Administrator of the Estate of Charles Eddy Paxton, Deceased, Appellant.

[S. F. No. 7055.   Department Two.—December 15, 1915.]

FRANK H. GOULD, Appellant, v. BLITZ W. PAXTON, as Administrator of the Estate of Charles Eddy Paxton, Deceased, Respondent.

CONVERSION OF STOCKS BY BROKER—AGREEMENT TO BUY AND SELL ON MARGIN—ABSENCE OF PLEADINGS OR FINDINGS—INDEBTEDNESS TO BROKER.—In an action against a stockbroker for the conversion of certain shares of stock purchased by him for the account of the plaintiff, the transactions between the parties cannot be held on appeal to have been mere agreements to purchase and sell stock on margin, in violation of section 26 of article IV of the constitution, in the absence of any pleading or finding to that effect.   The mere fact that at the time their transactions were closed the plaintiff owed the broker a certain sum of money does not establish that their dealings were of such prohibited character.

ID.—MEASURE OF DAMAGES—DILIGENCE IN PROSECUTING ACTION—HIGH-EST MARKET VALUE—OPTIONAL RIGHT TO ELECT.—Where an action for the wrongful conversion of personal property is prosecuted with reasonable diligence, the plaintiff has the optional right, under section 3336 of the Civil Code, to recover the highest market value of the property intermediate the conversion and the rendition of the verdict, and the right to elect such measure of damages is open to him during all of that time.   He is not required to plead it.   It is sufficient if in any appropriate way, even by oral declaration in open court, he announce his determination to demand that highest market value.

ID.—FINDINGS—EVIDENCE.—The findings declaring the conversion and the diligence in the prosecution of this action are held to be ade-quately supported by the evidence.

ID.—FINDINGS OF PROBATIVE FACTS.—The findings as to the highest market value of the converted stocks is sufficient, where the court clearly finds the probative facts establishing this highest market value as to each of the stocks.

ID.—APPEAL BY PLAINTIFF—CONSIDERATION OF RECORD ON CROSS-APPEAL BY DEFENDANT.—On an appeal by the plaintiff taken on the judgment-roll alone from the judgment awarding him less than the highest market value of the converted stocks, the record on a cross-appeal by the defendant from the same judgment, and also from an order denying his motion for a new trial, may be considered in order to determine that the plaintiff at the trial asserted his right to recover the highest market value.

ID.—CONVERSION OF MINING STOCKS — MEASURE OF DAMAGES.—The measure of damages embodied in section 3336 of the Civil Code for the wrongful conversion of personal property is applicable to mining stocks.

APPEALS from a judgment of the Superior Court of the City and County of San Francisco, from an order refusing a new trial, and from an order substituting an assignee as party plaintiff. James M. Troutt, Judge.

The facts are stated in the opinion of the court.

Frank H. Gould, and Vincent Surr, for Appellant in Nos. 6653 and 7055, and for Respondent in No. 6903.

William M. Cannon, and Kingsley Cannon, for Respondent in Nos. 6653 and 7055, and for Appellant in No. 6903.

HENSHAW, J.—Plaintiff Potts brought his action against defendant, as administrator of the estate of Charles Eddy Paxton, to recover damages for the asserted conversion by Charles Eddy Paxton of certain mining stocks in the possession of Paxton, but the property of plaintiff.

S. F. No. 6653 is the appeal of plaintiff from the judgment given in his favor. S. F. No. 6903 is the appeal of the administrator from the same judgment and from the order denying his motion for a new trial. S. F. No. 7055 is by Frank H. Gould, attorney for plaintiff, substituted for plaintiff after suggestion of the latter's death. This appeal is taken from the order of substitution.

The first two appeals are directed to the opposing views which the litigants take concerning the measure and amount

of damages awardable in law under the pleadings and find-
ings and evidence in the case.    These two appeals may, there-
fore, be considered together.

Charles Paxton in his lifetime was a broker, dealing in
stocks and bonds.    Plaintiff Potts was his client.    Their
dealings covered a number of years.    In June, 1910, Charles
Paxton died intestate.    At the time of his death his books
and other evidence showed that he held for the account of
plaintiff numbers of shares of stocks in sundry Nevada
mines.    It was also shown that there was an indebtedness
to the amount of $669 due from Potts to Paxton growing
out of their dealings.    Potts made prompt efforts to secure
possession of the stocks from the administrator of Charles
Paxton's estate, offering to pay all sums due and chargeable
against him.    There was temporizing and delay.    The ad-
ministrator found that a great quantity of the stocks in the
custody of Paxton had been pledged by him to the banks
as security for his personal account.    The administrator
apparently did not know whether he could deliver all or any
of the stock to the demanding clients of Charles Paxton.
Time passed and during this time certain of these stocks so
owned by Potts were assessed.    Upon demand of the admin-
istrator Potts paid to him the assessments on these stocks.
Finally, upon May 1, 1911, Potts brought this action in con-
version, charging the conversion as having taken place upon
June 7th—the day of the death of Charles Paxton—and lay-
ing damages in accordance with the asserted value of the
stocks at that time in the sum of $4,774.

The court found that Paxton had purchased the stocks
under the orders of plaintiff and retained these stocks in his
custody as plaintiff's trustee, charged with the duty of deliv-
ering them to the plaintiff upon demand; that the money
for the purchase of these stocks was furnished by plaintiff.
The court further found the prompt and repeated demands
of plaintiff after the death of Charles Paxton for the delivery
of the stock and the delay and neglect of the administrator
so to deliver, until the final refusal so to do; that plaintiff at
all times exercised reasonable diligence and prosecuted his
action against the defendant for damages with due and rea-
sonable diligence, and without laches.    The court also found
the conversion of the stock prior to the death of Charles
Paxton and that the stock was of the value of $1,501 at the

time of its conversion; next, that stock of these mining corporations of the same character as that owned and demanded by plaintiff was sold for the benefit of the estate of Charles Paxton, and that at the prices sold, when so sold, plaintiff's stock was of the value of $5,333; and finally, that the highest price reached by these stocks between the time of conversion and the time of rendering judgment (a jury trial having been waived and hence no verdict of a jury being possible) would place a valuation upon plaintiff's stocks of $7,415.

The court adopted as its measure of value the prices at which the stocks were actually sold, and gave judgment for plaintiff in that sum, to which was added the amount of the assessments which plaintiff had paid on account of the stocks after the death of Paxton, and from this total was deducted the $669 due to Charles Paxton from plaintiff upon this open account.

Section 3336 of our Civil Code declares:

"The detriment caused by the wrongful conversion of personal property is presumed to be:

"First. The value of the property at the time of the conversion, with the interest from that time, or, where the action has been prosecuted with reasonable diligence, the highest market value of the property at any time between the conversion and the verdict, without interest, at the option of the injured party."

Plaintiff's contention is that he was entitled to the highest market value of the stock after the conversion and before judgment, and that the court erred in refusing to give him this award of damages and in limiting the award to the amount for which the stock was actually sold. Defendant advances several contentions: That the transactions between plaintiff and Charles Paxton were mere agreements to purchase and sell stock on margin, in violation of section 26, article IV, of the constitution, both as it stood originally and as amended in 1908, and that therefore as plaintiff owed Paxton $669, he was entitled to no recovery; next it is said that, having laid his damages in accordance with the alleged value of the stock at the time of the conversion, and that value having been found by the court to be fifteen hundred dollars, the right of recovery is limited to the difference between the amount plaintiff owed Paxton and this fifteen hundred dollars; and, again, it is said that in no event is

plaintiff entitled to the highest value which the stock reached, because by his pleading he exercised his option and election to take the market value of the stock at the date of the conversion, and that this is shown not only from the complaint itself, but from the fact that in subsequent amendments to the complaint filed after the stock had advanced beyond the amount charged as its value in the complaint, plaintiff still did not announce his option and election to take that higher value.

Dealing with the first of defendant's contentions, it is sufficient to say that there is no pleading or finding that the transactions between these parties come within the category of those condemned by the constitution, and the mere fact that a man owes his broker a certain sum of money does not establish in and of itself that the transactions between the parties were within the ban of the law, especially so as every presumption favors uprightness and legal dealing.

The other contentions of defendant are so intimately connected as to require consideration together. If it be true that a plaintiff, by laying his damages at the value of the property when converted, deprives himself of the right to insist upon the alternative measure of damages provided by the code, defendant's position is of course sound. But the very reading of the code section forbids this construction. A plaintiff is entitled to this highest market value only where he has prosecuted his action with reasonable diligence. This highest market value is the highest market value after the conversion and up to the moment of the rendition of the verdict, and manifestly during all of that time, if he has prosecuted his action with reasonable diligence, the option or election is open to him. He is not required to plead it. It is sufficient if in any appropriate way, even by oral declaration in open court, he announce his determination to demand that highest market value. With the equitableness of this rule of damage we cannot here be concerned. Nor can any arguments, however potent, touching the hardship of the law and its invitation to unjust speculation upon the part of the plaintiff against the defendant, who should only be called upon to make good the loss which the plaintiff has sustained, have any effect to modify the plain provisions of the law as written. Our cases support the right of a plain-

tiff to a recovery such as plaintiff claims. (*Douglass* v. *Kraft*, 9 Cal. 563; *Hamer* v. *Hathaway*, 33 Cal. 119; *Tulley* v. *Tranor*, 53 Cal. 280; *Dent* v. *Holbrook*, 54 Cal. 145.)

Defendant's further objections that neither diligence nor any conversion was shown are attacks upon the sufficiency of the evidence to sustain the findings. But the findings declaring both diligence and conversion are adequately supported. Nor is there substantial merit in defendant's contention that in no event could plaintiff be entitled to an increased judgment for the highest market value of the stock because there is no finding of damage in this regard. The court clearly finds the probative facts establishing this highest market value as to each of plaintiff's stocks, and where these facts are found and where the ultimate fact can and must be drawn from them in but one way, the requirements of our law are satisfied. (*Perry* v. *Quackenbush,* 105 Cal. 305, [38 Pac. 740]; *Jessen* v. *Peterson,* 18 Cal. App. 349, [123 Pac. 219].) Finally, defendant insists that upon the record which plaintiff brings up in his appeal there is no showing that he exercised his option to demand the highest market value, and he insists, therefore, that the court was at liberty to award him damages in any sum contemplated by the law (*Barrante* v. *Garratt,* 50 Cal. 112); that manifestly the court refused to award him the highest market value, and adopted an unauthorized compromise valuation, as was improperly done in *Hamer* v. *Hathaway,* 33 Cal. 117, and that therefore the trial court should be instructed to render judgment for the value of the property at the time of the conversion, which it finds to be fifteen hundred dollars. We have heretofore said that a plaintiff may indicate that he has exercised his option at any time before verdict by any appropriate method. It need not be by pleading. It may even be by *viva voce* declaration in open court. Plaintiff's appeal being taken upon the judgment-roll alone, there is unquestionably the absence of a formal finding that he did so exercise his option. Yet the fact that he did so in open court is abundantly established by the record which defendant brings up on his appeal. Plaintiff not only declared his election repeatedly in open court; it was not only recognized that he was insisting upon his right to damages in the alternative amount fixed by the code section, but he even offered an amendment to his complaint declaring that he so did, which

amendment he was refused leave to file under the view of the court that it was unnecessary. Here certainly is a case for the application of section 4½, article VI, of the constitution. These facts being sufficiently made to appear by the records of this court, in a cross-appeal in the same case and from the same judgment, every consideration dictates that the questions should be, as they can be, here and now completely disposed of, without subjecting the litigants either to the expense and delay of another trial, or to the production of supplementary records to establish a proposition which in reality is not in dispute.

The application of the rule of damage of section 3336 is criticised when applied to mining stocks subject to great fluctuations in value. History tells us that railroad stocks and other industrials are also subject to these amazing fluctuations. But even if the application be thought unjust, as it is declared in *Galigher* v. *Jones,* 129 U. S. 193, [32 L. Ed. 658, 9 Sup. Ct. Rep. 335], it is not debatable in this state that this measure of damages is applicable to mining stocks. (*Dent* v. *Holbrook,* 54 Cal. 145; *Fromm* v. *Sierra Nevada S. M. Co.,* 61 Cal. 629, 634.)

It follows herefrom that defendant's appeal must be and is denied, and that plaintiff is entitled upon the findings to the maximum market value of his stocks as there declared, and the trial court will therefore modify its judgment accordingly.

Appeal S. F. No. 7055. The foregoing discussion and conclusions render unnecessary any detailed consideration of this appeal, the facts in brief being that appellant Gould was the attorney for plaintiff Potts, and filed with the court an assignment absolute in form of Potts' rights under the judgment. By order of court he was substituted for Potts upon suggestion of the latter's death. The question, as has been said, has ceased to be one of more than academic interest, but to the end that it may not be in doubt and to relieve the case from the possibility of future embarrassment, the order of substitution is sustained and the appeal denied.

Lorigan, J., and Melvin, J., concurred.

Hearing in Bank denied.