STATE EX REL. BROADWATER FARMS CO. ET AL., APPELLANTS, *v.* BROADWATER ELEVATOR CO.. ET AL., RESPONDENTS.

(No. 4,482.)

(Submitted September 23, 1921.   Decided October 27, 1921.)

[201 Pac. 687.]

*Conversion — Grain Elevators — Warehousemen — Bailment — Sales—Statutory Measure of Damages—Evidence—Varying Written Contract—Custom—Suretyship.*

Grain Elevators—Conversion—Warehouse Receipts—Varying Contracts by Parol Testimony.
 1.  Warehouse receipts for grain stored in an elevator issued under the provisions of the Grain Elevator Act (Laws 1915, Chap. 93) constituted binding contracts between the bailor and bailee which could not be varied or contradicted by parol testimony, the effect of which was to show that the transaction amounted to a sale and not a bailment.

Same—Warehousemen—Bailment—Agency—Sale by Elevator of Stored Grain to Itself Void.
 2.  An elevator company with which grain was stored for sale, having been the agent of the bailor, could not make a sale to itself.

Same—Bailment—Sale Subject Matter—Prerequisite.
 3.  Where grain stored in an elevator had been sold by defendant immediately upon its receipt, defendant's contention in an action for

---

1. On the general rule that parol evidence not admissible to vary, add to, or alter a written instrument, see notes in 56 **Am. St. Rep.** 659; 17 **L. R. A.** 270.

On effect as to warehousemen of recitals in their receipts, see note in 19 **L. R. A.** 302.

conversion that by transactions had between it and plaintiffs some time after the issuance of warehouse receipts a sale of the grain had been consummated, *held* without merit, since then, the grain having been sold theretofore, there was no subject matter with relation to which the parties could enter into a contract of sale.

Same—Custom and Usage—When not Available as Defenses.

4. Since the Grain Elevator Act prescribes the mode in which the affairs of elevators shall be conducted, its provisions in this respect are the guide, and not usage or custom in conflict therewith.

Same — Conversion — Compromise and Settlement — Promise to Pay not Settlement in Absence of Payment.

5. One may not convert the property of another and escape liability by agreeing to pay a stated sum and then failing to make payment, where the transaction was intended to be a cash one.

Same—Conversion—Statutory Measure of Damages.

6. Where an action in conversion has been prosecuted with reasonable diligence, the plaintiff may exercise the option granted him by section 6071, Revised Codes, of demanding the highest market value of the property at any time between the conversion and the verdict, by giving notice, if he has not otherwise limited himself by his pleading, at any time before the submission of the cause for verdict or decision.

Same—Conversion—Statutory Measure of Damages Controlling.

7. Where plaintiff in an action in conversion has brought himself within the rule requiring diligence in prosecuting the action (Rev. Codes, sec. 6071), the fact that the measure of damages recoverable under it may be inequitable and unjust cannot deprive him of his right to recover the highest market value of the property at any time between the conversion and the verdict, at plaintiff's option, which he might have obtained but for the wrongful act of defendant.

Same—Bailment—Conversion—Minimizing Damages.

8. A bailor of grain stored in a public elevator is under no legal obligation to purchase grain in the open market in order to minimize the damages for which the warehouseman may be liable in case of wrongful conversion of the grain.

Same—Conversion—Date.

9. Ordinarily the date of demand and refusal is the date of conversion, but, if an actual conversion has previously occurred, demand and refusal as evidence of the time of conversion relates back to that event.

Same—Suretyship—Unauthorized Withdrawal of Bondsman—Effect.

10. Release or withdrawal of a surety on a bond given under the Grain Elevator Act, without the consent of the bailor of wheat, is no defense in an action for damages for the wrongful conversion of the grain stored.

*Appeals from District Court, Broadwater County; John A. Matthews, Judge.*

ACTION by the State of Montana, for the use and benefit of the Broadwater Farms Company and others similarly situ-

7. Measure of damages in actions for conversion, see notes in 24 Am. Dec. 70; 54 Am. Rep. 421.

ated, against the Broadwater Elevator Company and others. From a judgment in their favor deemed inadequate, and from an order denying their motion for a new trial, the plaintiffs appeal. Order affirmed and cause remanded, with instructions to modify judgment.

*Mr. James A. Walsh* and *Mr. C. P. Cotter,* for Appellants, submitted a brief; *Mr. Walsh* argued the cause orally.

The parties are entitled to recover the highest market price of wheat from the date of conversion to the date of decision. It is not necessary, in the pleading, to demand the highest market price. It is sufficient, as was done in this case, if the plaintiff will announce that the highest market price was and would be claimed. (*Potts* v. *Paxton,* 171 Cal. 493, 153 Pac. 957; *Funk* v. *Hendricks,* 24 Okl. 837, 105 Pac. 353.) Section 6071 of the Revised Codes defines the measure of damages. The provisions of the statute are clear and the decisions of supreme court construing that statute are decisive. (*Smith* v. *Caldwell,* 22 Mont. 339, 56 Pac. 590; *Page* v. *Fowler,* 39 Cal. 412, 2 Am. Rep. 462; *Posey* v. *Gamble,* 148 Ala. 660, 41 South. 416; *Gregg* v. *Bank of Columbia,* 72 S. C. 458, 110 Am. St. Rep. 633, 52 S. E. 195; *Succession of Gragard* v. *Metropolitan Bank,* 106 La. 298, 30 South. 885; *First Nat. Bank* v. *Red River Bank,* 9 N. D. 319, 83 N. W. 221 (this latter case related to conversion of wheat); *Learock* v. *Paxson,* 208 Pa. St. 602, 57 Atl. 1097.)

Sureties on a bond are liable for the damages prescribed by the Code. There cannot be one rule of damages for the principal and another for the sureties. The question has been seldom presented to the courts and the authorities are not numerous; however, we call attention to the following: *Fuller* v. *Calkins,* 22 Iowa, 301; *Gilbert* v. *Isham,* 16 Conn. 525; *Wylie* v. *Gallagher,* 46 Pa. St. 205; *Smith* v. *United States* (Ariz.), 45 Pac. 341.

The duty of the elevator company was to retain the wheat or the same quantity of wheat of like character in its ele-

vators in Montana, or in a terminal elevator, where it could be delivered to the Broadwater Farms Company on demand according to the terms of the storage certificate. In fact, the elevator company was guilty of grand larceny in selling the wheat. (*State* v. *Rieger,* 59 Minn. 151, 60 N. W. 1087.)

*Messrs. Walsh, Nolan & Scallon,* for Respondents, submitted a brief; *Mr. C. B. Nolan* argued the cause orally.

The contention of the respondents is that when the wheat was delivered there was a sale of same; part of the purchase price was paid, and the balance of the purchase price was to be paid whenever the price was agreed on, the price to be determined by the market quotations prevailing at a designated time, to be fixed by the grain owners. This being true, the sureties could not be held responsible on the bond that was executed by them. The contract of the sureties imposed a liability on them only in the case of a bailment and as the transaction involved a sale of the wheat, the sureties, not consenting to this change in the relationship existing, were not liable. We insist, then, that on the proof, which unqualifiedly preponderates against the findings, there can be no question but what the transaction constituted a sale of the wheat to the warehouse company. (3 Ruling Case Law, p. 76; *Cloke* v. *Shafroth,* 137 Ill. 393, 31 Am. St. Rep. 375, 27 N. E. 702; *Carlisle* v. *Wallace,* 12 Ind. 252, 74 Am. Dec. 207; *Barnes* v. *McCrea,* 75 Iowa, 267, 9 Am. St. Rep. 473, 39 N. W. 392; *Bretz* v. *Diehl,* 117 Pa. St. 589, 2 Am. St. Rep. 706, and note, 11 Atl. 893; *Bonnett* v. *Farmers & Growers' Shipping Assn.,* 105 Kan. 121, 181 Pac. 635; *Savage* v. *Salem Mills Co.,* 48 Or. 1, 10 Ann. Cas. 1065, 85 Pac. 69; see note, 10 Am. & Eng. Ann. Cas., p. 1065.)

This brings us to the consideration of the question as to whether, assuming now that the transactions under consideration constituted sales, the sureties can be held responsible on the bond executed by them. It is too apparent to need discussion that a surety may be willing to assume responsi-

bility on a bond where the grain is to be retained by the warehouseman and may not be willing to assume responsibility where a transaction occurs such as the evidence discloses took place here. It needs no elaborate, if any, effort to show that the responsibility assumed is much greater in the latter case. In the one instance, the surety is protected against the dishonesty of the warehouseman should he convert the grain to his own use, as in that case, for such misconduct the warehouseman could be prosecuted criminally. In the other case, the transaction involves no criminal risk to the warehouseman should he refuse to pay over the balance of the money due to the grain owner. It is familiar law, says this court, "that engagements of suretyship are *strictissimi juris;* the sureties are entitled to stand upon the exact letter of their bond; they cannot be charged beyond its terms." (*Standard Sewing Machine Co.* v. *Smith,* 51 Mont. 245, L. R. A. 1918A, 292, 152 Pac. 38; 21 Ruling Case Law, secs. 50, 53; *First National Bank* v. *Gerke,* 68 Md. 449, 6 Am. St. Rep. 456, 13 Atl. 358; *Thompson* v. *Metropolitan Bldg. Co.,* 95 Wash. 546, 164 Pac. 222; *United States Glass Co.* v. *West Virginia Flint Bottle Co.,* 81 Fed. 993; *Peru Plow & Wheel Co.* v. *Ward,* 1 Kan. App. 6, 41 Pac. 64.)

It is claimed that the highest price which the grain reached up to the time of the trial should be fixed as the measure of damages. There seems to be a disposition on the part of some courts where statutes exist, such as we have in Montana, to reject this rule whenever the same is possible, characterizing it as an unjust basis for estimating damages. (*Baker* v. *Drake,* 53 N. Y. 211, 13 Am. Rep. 507.) The present action is an equitable one, and it would be inequitable to fix as a measure of damages prices which necessarily have nothing to do with normal conditions. We insist likewise that the appellants are not in a position to insist on this measure of damages, as the duty devolved upon them to minimize the damage as much as possible. After they learned that the conversion of this wheat had taken place, it was

incumbent upon them to replace the same in the event that it was their purpose to retain the wheat, and if not, surely they should not be allowed damages in excess of what the wheat could be purchased for within a reasonable time after the conversion took place. The price was agreed on, and if the money was available at this time a settlement could be effected at this price. It is settled law in cases of this kind and in all cases where a like principle is involved that the party injured must minimize the damages as much as possible. (*Ashley* v. *Rocky Mt. Bell Tel. Co.,* 25 Mont. 286, 64 Pac. 765; *Sweeney* v. *Mont. Cent. Ry. Co.,* 25 Mont. 543, 65 Pac. 912; *Tiggerman* v. *City of Butte,* 44 Mont. 138, 119 Pac. 477; *Freeman* v. *Chicago, M. & St. P. Ry.,* 52 Mont. 1, 154 Pac. 912.) The record clearly discloses that the appellants fixed the time at which they concluded to dispose of their wheat. It seems that the market quotations had reached such a figure as to induce them to sell the wheat at the price then prevailing. Every principle of reason and justice requires that the price which was then agreed to should be the price that should be adopted. (*Wright* v. *Bank of Metropolis,* 110 N. Y. 237, 6 Am. St. Rep. 362, 363, 1 L. R. A. 289, 18 N. E. 79.) All of the claimants made demand for specific amounts. We submit that the amount so demanded marked the full measure of liability under the provisions of this section, and these are the amounts which are provided for in the judgment appealed from.

MR. CHIEF COMMISSIONER POORMAN prepared the opinion for the court.

This is an appeal by plaintiffs from a judgment in their favor, made and entered by the court sitting without a jury, and also from an order denying plaintiffs' motion for a new trial. The ground of the appeal is that the judgment is inadequate in amount and that the bondsmen were held not liable as to a part of the judgment.

The Broadwater Elevator Company was a corporation and a public warehouseman, licensed to do business under the provisions of Chapter 93 of the Laws of 1915, and owned and operated an elevator at Townsend and also one at Toston, Montana. The defendants Whaley, Faltemeyer, Geehan, Dixon, and Hayes were the bondsmen of the defendant company. In the fall of 1915, the plaintiffs delivered to the defendant elevator company certain wheat and received storage receipts therefor. These receipts contained the facts required to be stated by section 31 of said Chapter, and also by indorsement contained the provisions of section 36, relating to the limitation of charges, are substantially in the same form, and we quote one of them here and the indorsements, in so far as material to this case:

"Montana Storage Receipt Approved June, 1915.

"Broadwater Elevator Company No. 14.

"Townsend, Montana, Nov. 15, 1915.

"Operated as a Public Warehouse under License Issued by the State Grain Inspection Department of the State of Montana.

"Received in store from Broadwater Farm Co. Four thousand nine hundred twenty-six bushels of 2 H. W. (kind or grade of grain).

"Weighed and graded by Thos. Sheehan.

"Gross lbs.

"Tare.

"Net lbs.

"Gross bus. 4,967.50.

"Dockage, 41.50.

"Net bus. 4,926.00.

"This lot of grain has been stored with grain of the same kind and grade and a similar quantity and grade is deliverable upon the return of this receipt properly indorsed by the person to whose order it was issued and the payment of the proper charges for storage and handling.

"This grain is insured for the benefit of the owner.

"Dockage on wheat and rye is in pounds per bushel; on flax in percentage of the gross amount. No dockage is permitted on other grain.

"BROADWATER ELEVATOR COMPANY,

"By A. W. FINCH, Manager.

"Advanced—

"60c per bushel."

Indorsed on back thereof:

"Subject to the following charges and conditions.

"1. [Relates to the limitation of charges.]

"2. [Relates to cleaning of the grain.]

"3. Our account for seed, bags, merchandise or cash that we may have furnished or become responsible for, with interest due thereon until paid."

The remainder of the indorsements have no relation to the questions presented on this appeal.

The particular questions presented are:

(1) Was the original transaction a sale or a bailment, and incidentally involving the admissibility of certain oral evidence?

(2) Did the transactions subsequent to the issuance of the storage receipts constitute a sale of the wheat to the elevator company?

(3) What is the measure of damages?

(4) Are the bondsmen liable?

The respondents admit that, not having taken any appeal, they cannot be heard to question the sufficiency of the judgment or to assail it in any manner, but insist that inasmuch as the appellants ask to have the judgment set aside and a new final judgment entered, they have the right to urge what they deem as errors committed by the trial court in combating the new condition that would be thus thrust upon them, and in support of this position cite: 4 C. J. 695, 696; *Landrem* v. *Jordan*, 203 U. S. 56, 51 L. Ed. 88, 27 Sup. Ct. Rep. 17 [see, also, Rose's U. S. Notes]; *Philadelphia Casualty Co.* v. *Fechheimer*, 220 Fed. 401, Ann. Cas. 1917D, 64, 135

C. C. A. 25; *MacGinniss* v. *Boston & M. etc. Co.,* 29 Mont. 428, 75 Pac. 89.

Whatever the rule may be, in the present case the entire record has been examined, and necessarily so from the questions above enumerated.

1. At the trial of the action the defendants, over the objec-
[1] tion of the plaintiff, introduced evidence to the effect that prior to and at the time of the issuance of the warehouse receipt an oral agreement was entered into between the parties which amounted to a sale of the wheat to the elevator company instead of a bailment. The appellant maintains that this evidence was incompetent.

The provisions of section 7873, Revised Codes, are well known. Where an agreement has been reduced to writing, it is presumed to contain all the terms, and evidence varying or contradicting this writing is not admissible except in cases of mistake or imperfection, or where the validity of the agreement is the fact in dispute. The provisions of this section do not, in proper cases, exclude evidence of the circumstances under which an agreement was made, or to which it relates. (*Sathre* v. *Rolfe,* 31 Mont. 85, 77 Pac. 432; *Gardiner* v. *McDonogh,* 147 Cal. 318, 81 Pac. 964.) However, none of these exceptions appear to be present in this case.

The respondents, in support of their contention, cite *Gafford* v. *Globe Transfer & Storage Co.,* 71 Wash. 204, 128 Pac. 228; *Windell* v. *Readman Warehouse Co.,* 30 Wash. 469, 71 Pac. 56; *McCurdy* v. *Wallblom Furniture etc. Co.,* 94 Minn. 326, 3 Ann. Cas. 468, 102 N. W. 873. An examination of those cases discloses a different state of facts from that appearing in the instant case. In the *McCurdy Case* the plaintiff had stored certain goods with the defendant company and "was given a warehouse receipt in conventional form, which provided for storage generally, but did not specify where the goods were to be kept." Subsequently, the bailee, without the knowledge or consent of the bailor, removed the goods to another place, where they were de-

stroyed or damaged by fire. Oral evidence was admitted
for the purpose of showing that the goods were to be stored
and kept at the place where they were delivered by the
bailor. In the *Gafford* and *Windell Cases* the goods were left
for storage and not any receipts given at the time to the
bailors, but were subsequently made out by the bailee and
mailed to the bailors. In the actions brought for damage
to the goods the bailors were permitted to introduce oral
evidence of the contract of storage entered into between
the parties at the time, on the theory that the receipts which
had been subsequently made out by the storage companies
and mailed to the bailors did not express the contract of stor-
age, but were simply unilateral agreements on the part of
the storage companies, which were not binding upon the
other party until accepted by him. In the *Windell Case* the
court sustained an instruction given to the jury to the effect
that if the warehouse receipt was delivered to the plaintiffs,
and they understood it at the time and it expressed the con-
tract of storage, then the written contract contained in it
was controlling and could not be varied or contradicted in
any manner by an oral agreement or any evidence thereof.

The receipts in the present case were prepared by the de-
fendant company, signed by it, and by it delivered to the
plaintiffs. The defendant company thus knew of their con-
tents and provisions; they were accepted at the time by the
other parties and retained by them, and no claim is made
by plaintiffs that they did not know the contents. Hence
they became binding contracts on all of the parties, for it
would be an idle provision of law to require a receipt to
be issued which was not binding. The law specifically pro-
hibits a public warehouseman from inserting "in any storage
receipt any language limiting or modifying his liabilities or
responsibilities as imposed by law." (Sec. 31, Chap. 93, Laws
1915.) The warehouseman being prohibited by law from
inserting such a provision in the receipt, he cannot read it
therein by proving a prior parol or contemporaneous agree-

ment, converting the storage receipt into a bill of sale or limiting his liabilities to that of a purchaser. The receipts issued and outstanding are binding contracts, and it was error to admit this evidence. A bill of sale, not a bailee's receipt, is the proper instrument in case of a sale. Some of the receipts issued contain on their face the word ''advanced,'' followed by a statement in figures of the amount of money paid to the owner at the time of the deposit. Plaintiffs admit that the money advanced was to be taken out of the sales price of the wheat when sold, but deny that there was any agreement as to when or to whom a sale would be made. Plaintiffs also admit that they could not demand the return of the wheat without the payment of charges and tendering the money advanced, with the interest. Defendants admit that this was done, and the bailee is fully protected by the provisions of the third indorsement on the back of the receipts. The receipts on their face show that the grain stored is charged with the amount of ''cash'' * * * furnished,'' and neither the original holder nor his assignee could compel the return of the grain without returning the money so advanced, with interest thereon.

2. It is claimed by respondents that the transactions sub-
**[2, 3]** sequent to the issuance of the warehouse receipts constitute a sale. The wheat was delivered to the defendant company in November and December, 1915. The evidence of plaintiff is that demand for the return of the wheat was made by and on behalf of the Crowley and D'Arcy interests in the latter part of May or the fore part of June, 1916, and that there was at that time an effort made to effect a money settlement, but the same was not consummated and no money was paid nor wheat delivered. Defendant denies any demand for the wheat at that time and claims that a fixed price was agreed upon, but admits that nothing was paid and that prior to that time it had sold all of the wheat in its possession. On June 9, 1916, the plaintiff Broadwater Farms Company wired the defendant company from Chicago:

"Sell our wheat immediately at Mpls price and send draft to me. Wire price to-day at which sold." On the same date the defendant company replied: "Sold your wheat as your wire. Our market here to-day Basis Mpls eighty-three cents. Mail storage ticket to State Bank Townsend and will take up at once." On June 20, 1916, the Broadwater Farms Company wrote the defendant company requesting that they be paid eighty-five cents for their wheat. A. W. Finch, manager of the defendant company and called as a witness for defendant, in answer to questions asked him on cross-examination, testified: "Q. Had you made arrangements with the State Bank of Townsend to take up this wheat certificate that was delivered there? A. No, sir. Q. Did you have any money in the bank to take it up? A. I wasn't doing business at the State Bank of Townsend; it was simply a matter of business that I presumed they would want to— Q. Did you expect the bank would take it up? A. No, sir." The witness further stated that at the time the defendant company did not have any elevator in Townsend or elsewhere, but had previously sold its elevators; that the wheat had been sold and the proceeds lost in the purchase of options, on grading, or in shipment; that he expected to raise money by having the bondsman sign a note, but failed. Witness further testified that at the time he sent this wire he did not deliver any wheat to the alleged purchaser nor receive any money from it; that there was no wheat there to deliver or to sell; that the company was at that time unable to pay its debts, although it had not been declared a bankrupt. The appellant maintains that the defendant company was the agent of the Broadwater Farms Company for the sale of wheat, and for that reason could not legally make a sale to itself. Under the facts in this case, the position of the appellant is well taken. (*Jensen* v. *Williams,* 36 Neb. 869, 20 L. R. A. 207, 55 N. W. 279, 281; 4 R. C. L., sec. 25, pp. 276, 277.) But this alleged sale is void for another reason. There was not at that time, nor afterwards, in existence any subject matter with refer-

ence to which the parties could contract. As early as May 10, 1916, the defendant company sold its elevator and all the few bushels of grain it then had. In fact, the wheat of all of these plaintiffs was sold immediately after its receipt at the elevator in November and December, 1915. Had the wheat been returned in kind, the plaintiffs could not have complained. At no time were these warehouse receipts called in, but were at all times and are yet outstanding, nor is there any evidence here that the books of the company contain any entry of the purchase of this wheat, as the law requires. (Sec. 39, Chap. 93, [4] Laws 1915.) It is claimed by defendant company that it followed the usage and custom of elevators, but the specific provisions of the law furnish the guide, and not usage and custom.

The Minnesota supreme court held that, although the warehouse receipt contained a provision giving the warehouseman the option to purchase upon the return of the receipts, he was guilty of a violation of law if he disposed of the wheat prior to the return of the receipt. The statute in that state may not be the same as the statute here, but the court nevertheless gave to the act a strict construction, for the protection of those who parted with the possession of their property and intrusted it to the honesty of others. (*State* v. *Rieger*, 59 Minn. 151, 60 N. W. 1087.) Under these facts we are impelled to the conclusion that there never was any sale of this grain to the defendant elevator company, and that it actually converted the same long prior to the demand made by the bailors. To epitomize—the owners attempted to recover their grain or the money therefor and did not get [5] either. The law will not permit one to convert the property of another and to escape liability by simply agreeing to pay a stated sum and then not making payment when it is to be a cash transaction. The payment of the consideration is necessary to the consummation of a settlement unless time is given, and if payment is not made the entire effort fails.

3. Section 6071, Revised Codes, prescribes the rule of damages to be assessed in actions of wrongful conversion, and in so far as it has relation to the questions here presented is as follows: "The detriment caused by the wrongful conversion of personal property is presumed to be: (1) The value of the property at the time of its conversion, with the interest from that time; or, where the action has been prosecuted with reasonable diligence, the highest market value of the property at any time between the conversion and the verdict, without interest, at the option of the injured party." The statement contained in section 32, Chapter 93, Laws of 1915, does not change this rule of damages.

At the trial, and before the introduction of any evidence, plaintiffs served notice that they demanded the highest market price of wheat between the date of the conversion and the date of the decision and judgment of the court. This seems to be sufficient to raise the question, unless the plaintiff has otherwise limited himself by his pleading. (*Potts* v. *Paxton,* 171 Cal. 493, 153 Pac. 957, 959; *Funk* v. *Hendricks,* 24 Okl. 837, 105 Pac. 352.) However, the time should terminate with the submission of the cause for verdict or decision. The respondents contend that in equity and good conscience they ought not to be required to do more than to pay to plaintiffs the amount plaintiffs were willing to accept prior to the institution of the suit, and which was then the prevailing price of wheat, with interest on that amount. In ordinary cases there would be force to this contention. The wheat was undoubtedly stored as the first step toward reaching a market. It was held for high prices. Although the owners may have been willing to accept a much lower price prior to the suit than that which afterward prevailed, they did not receive it, and the attempted settlement failed and the wheat was not returned; hence they were prevented by the wrongful act of the defendant company from selling to other parties or of holding for a higher price, which they had the legal right to do. Prior to the

enactment of this statute the rule for the measurement of damages appears to have been very uncertain. (*Page* v. *Fowler,* 39 Cal. 412, 2 Am. Rep. 462.)

In considering the rule of damage under a section identical in language with that just quoted, the supreme court of North Dakota said: "In *Pickert* v. *Rugg,* [1 N. D. 230, 46 N. W. 446], the court took occasion to call attention to the injustice which will necessarily follow in many cases by an application of the rule promulgated by the legislature in the section just quoted, by giving to the injured party, not merely compensation for the injury he has suffered, but a right to recover the highest market value up to the time of the verdict, however fictitious that value may be. In the case at bar the recovery for the wheat converted bears no just relation to the damage which the plaintiff suffered. It is a misnomer to call it 'compensation.' It is largely punishment. But, however averse we may be to the rule, it is the rule which governs; and the plaintiff has an absolute right to recover the highest market price, if it so elects, provided only that it has prosecuted its action with reasonable diligence. Counsel for defendant contends that the court erred in determining that the facts show reasonable diligence in prosecuting the action. In *Pickert* v. *Rugg, supra,* it was held, in accordance with the prevailing opinion of the courts, that, where the facts upon the question of diligence are not in dispute, the question as to whether reasonable diligence has been exercised is ordinarily to be determined by the court, as a question of law; further, that the reasonable diligence required of a suitor relates both to the commencement of the action and the subsequent prosecution." (*First Nat. Bank of Fargo* v. *Red River Valley Nat. Bank of Fargo,* 9 N. D. 319, 323, 83 N. W. 221, 223.)

In considering the rule of damages, under a similar statute, the California court said: "With the equitableness of this rule of damage we cannot here be concerned. Nor can any arguments, however potent, touching the hardship of the

law and its invitation to unjust speculation upon the part
of the plaintiff against the defendant, who should only be
called upon to make good the loss which the plaintiff has
sustained, have any effect to modify the plain provisions of
the law as written. Our cases support the right of a plain-
tiff to a recovery such as plaintiff claims. (*Douglass* v.
*Kraft,* 9 Cal. 563; *Hamer* v. *Hathaway,* 33 Cal. 119; *Tulley*
v. *Tranor,* 53 Cal. 280; *Dent* v. *Holbrook,* 54 Cal. 145.)''
(*Potts* v. *Paxton, supra; Smith* v. *Caldwell,* 22 Mont. 331,
56 Pac. 590; *Ferrat* v. *Adamson,* 53 Mont. 172, 181, 163 Pac.
112; *Funk* v. *Hendricks, supra.*)

If the provisions of section 6086 are binding in actions
of conversion, the public warehouseman, notwithstanding the
positive mandates of said Chapter 93, by operation of law
is given an option to return the grain on demand or to pay
the market price at that time, for that would be the measure
of his liability. Both sections 6086 and 6087 are general
provisions declaratory of principles of law already existing and
if complaint is made that a judgment is "unreasonable,"
"unconscionable," or "grossly oppressive," the appellate
court will determine the matter from the evidence, and if
there is no evidence the presumption governs. (*Ferrat* v.
*Adamson, supra.*)

Nor is there any legal obligations resting on the bailor of
[8] grain to purchase other grain in order to minimize the
damages for which the warehouseman may be liable in case
of wrongful conversion. The market is open to the ware-
houseman, and he may return the grain in kind.

The only question for determination by this court on this
branch of the case is whether this action was commenced
and prosecuted with reasonable diligence. The wheat was
deposited in the fall of 1915 and receipts issued. The receipts
do not prescribe any time within which the demand for re-
turn of the wheat must be had. These demands were not
made until the spring and summer of 1916, and a great deal
of that summer was spent in attempted settlement. There

was temporizing and delay. On October 30, 1916, the complaint in this action was filed. On February 13, 1917, the answer of the defendants was filed. On February 17, 1917, the replication of plaintiffs was filed. On February 26, 1917, defendants filed an amendment to their answer and on that day the trial was had. There was not any evidence introduced here as to lack of diligence (*Wilson* v. *Mathews,* 24 Barb. (N. Y.) 295), and as a matter of law it appears from the record that there was not any lack of diligence, either in commencing or prosecuting the action. This being the case, the rule of the statute is binding upon this court, and the highest market price of the wheat between the date of the conversion and the time of the trial must be the measure of damages. The precise date of this conversion is difficult to fix. It appears from the evidence that the defendant company disposed of all of its holdings, including its. elevators, at a date not later than May 10, 1916.

It is stated as a general rule that "Ordinarily, the date [9] of demand and refusal is the date of the conversion. If an actual conversion has previously occurred, demand and refusal as evidence of the time of conversion relates back to that event." (38 Cyc. 2032, and note 74.)

The trial court fixed June 1st as the date of conversion as to the Crowley and D'Arcy interests, and it appears that the demand and refusal of the Farms Company interest was August 2, 1916. For the purpose of this decision, these dates will be considered as the dates of the conversion.

4. The purpose of the law in requiring a bond is to protect [10] the bailors from wrongful acts of the warehouseman, and if the principal is liable the sureties are liable. The release, or attempted release, or withdrawal of the bondsman without the agreement of the injured party is of no avail as a defense in an action for damages following from wrongful acts already done. The transaction by which Mr. Wilson disposed of the interest he had in the wheat in storage by the

Crowley brothers does not affect the merits of this controversy.

For the reasons herein stated, we recommend that the order appealed from be affirmed; that the cause be remanded to the district court, with instructions to modify the judgment appealed from by entering judgment in favor of the plaintiffs and against all of the defendants for the highest market price of the wheat prevailing, as appears from the evidence, between the date of the conversion as herein fixed and the date of the trial of the action, less the storage charges due in each case, less also the money advanced, with eight per cent interest thereon from the time the same was advanced up to the time of the demand and tender.

PER CURIAM: For the reasons given in the foregoing opinion, the order appealed from is affirmed; the cause is remanded to the district court, with instructions to modify the judgment appealed from by entering judgment in favor of the plaintiffs and against all of the defendants for the highest market price of the wheat prevailing, as appears from the evidence, between the date of the conversion as herein fixed and the date of the trial of the action, less the storage charges due in each case, less also the money advanced, with eight per cent interest thereon from the time the same was advanced up to the time of the demand and tender.                    *Modified and affirmed.*